**DIRECTOR OF the OFFICE OF THRIFT SUPERVISION,**
Petitioner,

v.

**ERNST & YOUNG, Respondent.**

**Misc. No. 91–401 (RCL).**

United States District Court, District of Columbia.

April 16, 1992.

8

Glynn O'D. Loeb, Office of Thrift Supervision, Washington, D.C., for petitioner.

Kenneth S. Geller, Evan M. Tager, Micahel A. Vatis, Mayer, Brown & Platt, Kathryn A. Oberly, Daniel M. Gray, Stephen N. Young, Ernst & Young, Washington, D.C. for respondent.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case first came before the court on January 28, 1992, for a hearing on petitioner's petition for summary enforcement of an administrative subpoena *duces tecum* served upon Ernst & Young. On March 3, 1992, 786 F.Supp. 46, the court granted OTS' petition to enforce the subpoena. The court also directed the parties to endeavor to agree upon the conditions governing the enforcement of the subpoena and to file supplemental memoranda with respect to the issues upon which they could not agree. Since March 3, 1992, the parties have met on three occasions and have agreed upon a stipulated order which covers most of the issues regarding the enforcement of the subpoena. Seven issues, however, remain unresolved, and the parties have filed supplemental memoranda stating their positions with respect to these issues. Upon consideration of the parties' filings, the court shall order that the subpoena be enforced as requested by OTS.

## I. IMPLEMENTATION OF PRODUCTION

### A. *Copying Costs*

Ernst & Young insists that OTS should bear all copying costs. Ernst & Young's proposed order provides that "[i]f OTS representatives photograph any documents produced for inspection, the OTS shall provide Ernst & Young with duplicates of the photographs at OTS's expense. If the OTS determines that it needs photocopies of documents produced for inspection, the OTS will pay the cost of the photocopies...."

OTS, on the other hand, proposes the following language:

Kenneth J. Guido, Jr., Deputy Chief Counsel, Bryan T. Veis, Donna M. DeSilva,

If the OTS representatives determine that it is necessary for the OTS to take custody of documents produced for inspection pursuant to the Subpoena, Ernst & Young shall provide the originals to OTS within 48 hours of such determination; *provided, however,* that Ernst & Young may, at its own expense, copy such documents for its own use and retention prior to delivering such original documents to the OTS, *and further provided, however,* that Ernst & Young may choose to retain the originals in its custody of it: (a) provides a copy of each such original document to OTS at Ernst & Young's expense, within 48 hours, (b) maintains all such original documents in the order in which they were produced, and (c) makes any such original document available to OTS within 48 hours after a request for access to such documents by OTS. Ernst & Young shall inform OTS if documents are color coded and accommodate the reproduction of color codes in copying the documents.

The court shall follow OTS' proposal. The subpoena in this case requires Ernst & Young to produce the documents that OTS requests. If Ernst & Young produces the originals of these documents, it incurs no copying costs. Ernst & Young only incurs copying costs if it wishes to retain the originals. Under these circumstances, the court sees no reason why OTS should bear Ernst & Young's copying costs.

The cases cited by Ernst & Young, *SEC v. Arthur Young & Co.,* 584 F.2d 1018 (D.C.Cir.1978) and *United States v. Friedman,* 532 F.2d 928 (3d Cir.1976), do not require the court to impose the copying costs upon OTS. These cases merely recognize that the district court has the authority to order reimbursement when the cost of compliance is unreasonable. In the present case, the court finds that Ernst & Young's cost of compliance under OTS' proposal is not unreasonable.

### B. *Inspection Observer*

■ The parties agree that OTS shall provide Ernst & Young with two days' advance notice before inspecting any documents, that Ernst & Young shall make reasonable arrangements to permit OTS representatives to inspect documents, that Ernst & Young shall provide reasonable space for inspection by up to ten persons at one time and that Ernst & Young shall set aside a room for OTS representative to discuss matters privately. The parties do not agree, however, on whether an inspection observer should be present in the room where OTS is inspecting the documents. Ernst & Young claims that having an observer present would help assure that the documents are not altered, rearranged or otherwise handled in such a manner that would prevent them from being returned to their original condition.

OTS opposes having an Ernst & Young representative present when its representatives are inspecting Ernst & Young's documents because it would interfere with its investigation. OTS points out that Ernst & Young would not be entitled to insist on the presence of an observer had OTS required that the documents be produced in OTS' Washington, D.C. office instead of agreeing to inspect the documents at Ernst & Young's Dallas, Texas office.

The court shall follow OTS' proposal and not allow an Ernst & Young observer in the room where OTS is inspecting the documents for three reasons. First, Ernst & Young cites no authority for having an observer present. Second, the court agrees with OTS that the presence of an Ernst & Young representative during the inspection would interfere with OTS' investigation. Third, Ernst & Young's concerns with respect to the documents being altered, rearranged or otherwise mishandled may be addressed in other ways. For example, Ernst & Young may number the documents that are produced to assure that all are returned, and it may also make copies of the documents to assure that they are not altered.

## II. SCOPE OF PRODUCTION

### A. *Complaints*

■ In OTS' proposed order, OTS is willing to agree to a modification of Specification 15 of the subpoena. The modified

version would require Ernst & Young to produce all complaints filed in litigation against Ernst & Young that relate to Ernst & Young's performance of professional services for inspection by OTS representatives. Ernst & Young refuses to agree to this specification as modified because it asserts that this request is overbroad and unduly burdensome. Ernst & Young states that "[i]n today's litigious climate, anyone can, and often does, file a complaint against auditors with only the flimsiest of support," and thus it should not be required to produce every complaint.

The court finds that OTS is entitled to investigate the charges that are brought against Ernst & Young auditors. Reviewing complaints is clearly relevant to OTS' investigation, and it is for OTS, not Ernst & Young or this court, to determine which complaints are meritorious and which are "flimsy." Accordingly, the court shall follow OTS' proposed order on this issue.

### B. *Partner and Employee Diaries*

■ Specification 6 of the subpoena requests "all time summaries and diaries of all engagement personnel that performed work for such Designated Institution, including executives, partners and staff." Ernst & Young does not oppose the production of time summaries. It refuses, however, to agree to produce diaries of its partners and employees because it claims that these diaries are personal property not under Ernst & Young's control. Ernst & Young states that diaries are generally used to schedule both work and non-work related matters, and that as a result they are likely to contain highly personal information. Further, Ernst & Young, relying upon *O'Connor v. Ortega*, 480 U.S. 709, 717, 107 S.Ct. 1492, 1497, 94 L.Ed.2d 714 (1987), asserts that its partners and employees have a *reasonable expectation of privacy* over their diaries, even if they are maintained on their desks at work. Ernst & Young proposes that before these diaries are produced, partners and employees should have the right to redact any and all personal and non-thrift related appointments and entries.

OTS, in contrast, claims that it has the right to subpoena these diaries. OTS claims that to the extent that these diaries were generated and used during the course of their employment, they are Ernst & Young's property. OTS asserts *O'Connor* is not controlling because in that case the United States Supreme Court held that government employees can have a reasonable expectation of privacy in their places of work with regard to their *personal* effects under the Fourth Amendment. OTS asserts that Ernst & Young employees have no reasonable expectation of privacy over documents which relate to their work, such as their diaries in this case. Further, OTS opposes Ernst & Young's proposal because allowing partners and employees to redact information prior to their production creates great potential for abuse.

■ The court recognizes that partners and employees may have a reasonable expectation of privacy within the workplace. *See O'Connor*, 480 U.S. at 715–17, 107 S.Ct. at 1496–98. The reasonableness of this expectation, however, differs according to context, and an employee's expectation of privacy "must be assessed in the context of the employment relation." *Id.* Thus, "it is essential to delineate the boundaries of the workplace context." *Id.* at 715, 107 S.Ct. at 1496. The United States Supreme Court stated in *O'Connor* that "[t]he workplace includes those areas and items that are related to work and are generally within the employer's control." *Id.*

In the present case, the court finds that Ernst & Young's partners and employees do not have a reasonable expectation of privacy over their work-related diaries. The court assumes that the diaries in question are not personal diaries, the sort that are generally kept at one's home and in which one records their most personal feelings and thoughts. Rather, the court assumes that the diaries in question are work-related appointment books. These types of diaries are generally used in the course of one's employment to keep appointments, schedules, itineraries and the like. Ernst & Young's partners and employees cannot claim a reasonable expecta-

tion of privacy over such work-related diaries. The court recognizes that some partners or employees may calendar social events in their diaries, but many of these are work-related and the fact that a few personal items may appear in a work-related diary does not create a reasonable expectation of privacy over the entire diary.

The court further finds that Ernst & Young's suggestion that its partners and employees be permitted to react all personal entries in their diaries prior to their production is not practical because the risk for abuse is too high. Due to the nature of the information that is kept in these work-related diaries, the difference between work-related entries and personal entries is extremely vague. For example, one could consider a lunch meeting by a partner or employee and a representative of one of the institutions that is currently under investigation to be either work-related or personal. The point is that in this type of situation, partners and employees are likely to be tempted to redact many engagements as "personal" that are really work related to avoid raising the suspicions of OTS investigators.

### C. *Internal Reviews*

■ Specification 14 of the subpoena requires the production of "[a]ll Ernst & Young internal reviews of offices, policies, or billings and all related interoffice communications." Ernst & Young claims that it "does not understand just what documents Specification 14 is intended to cover," and claims that if enforced as written, this specification would require that "Ernst & Young could only guess whether the documents it produced were in fact responsive to the Subpoena." Ernst & Young also states that beyond being ill-defined, this request is overbroad because it is not limited to any financial institution or Ernst & Young office. Thus, Ernst & Young states that this request would force it to conduct a nationwide search for documents that may not even be responsive.

In addition, Ernst & Young speculates that the materials that are responsive to this request do not relate to the propriety of Ernst & Young's audits of financial institutions, but rather go to issues that are unrelated to OTS' investigation, such as internal "housekeeping" matters. Ernst & Young proposes that the language of this request be altered to state that "Ernst & Young shall conduct a reasonable search for all internal reviews of the productivity or billings of an office that audited an Institution and shall produce such reviews as may be found to exist."

OTS favors specification 14 as it appears in the subpoena. OTS states that all of Ernst & Young's internal reviews are relevant to its investigation of the professional services that Ernst & Young provided to the institutions. Contrary to Ernst & Young's belief, OTS asserts that internal reviews of "housekeeping" matters are relevant to its investigation because they could demonstrate whether Ernst & Young's treated the financial institutions in question differently from its other clients.

The court shall enforce Specification 14 as it is written. The court finds that all types of Ernst & Young's internal reviews, not just those relating to the financial institutions in this case, are relevant to OTS' investigation. As OTS points out, it is only by comparing Ernst & Young's treatment of the financial institutions with its treatment of other clients that OTS can determine whether Ernst & Young deviated from its standard operating procedures.

### D. *Privilege Log*

■ OTS' proposal with regard to the issue of privileged documents reads as follows:

> If Ernst & Young withholds any document responsive to the Subpoena by reason of a claim of privilege, Ernst & Young shall furnish an affidavit at the time the documents are produced identifying each document for which the privilege is claimed [i.e. a privilege log]. With respect to such document, Ernst & Young shall state the basis upon which the privilege is claimed, identify the specifications of the Subpoena to which the withheld document is responsive, and state the subject matter, number of

pages, author, date created, and the identities of all persons to whom the original or any copies of the document were shown or provided.

Ernst & Young's proposal on this issue differs only in that it would allow Ernst & Young to assert privilege in a much more general fashion. Ernst & Young's proposal states that upon the assertion of privilege, Ernst & Young shall furnish one of two types of affidavits. Ernst & Young could submit either a privilege log or it could claim a "blanket privilege." A blanket privilege would permit Ernst & Young to assert privilege over many documents by merely swearing that the documents were prepared by or for the Ernst & Young's General Counsel's Office in the anticipation of litigation and are retained in the files of such office. Ernst & Young asserts that without the ability to make a blanket assertion, compliance with the subpoena would be extremely burdensome because it would have to itemize hundreds or thousands of documents. OTS, on the other hand, claims that it is within the court's discretion to order a privilege log and that the privilege log is vital to its ability to challenge assertions of privilege by Ernst & Young.

The court shall follow OTS' proposal. Although the privilege log will undoubtedly be more burdensome on Ernst & Young than a blanket assertion, it is the only way by which OTS and, if necessary, the court could determine whether the documents at issue are truly privileged from production. Under Ernst & Young's proposal, OTS would have no way of knowing or finding out the grounds upon which the asserted privilege for each document is based. Consequently, OTS would be left to either challenge every assertion of privilege that is made by Ernst & Young or not challenge any. Neither of these options is acceptable.

### E. *Time Frame*

Ernst & Young and OTS agree that documents relating to particular institutions (Specifications 1–7, 17) should be required to be produced for the time period relating to the last two audits performed by Ernst & Young for each such institution. The parties disagree, however, upon the time frame for the production of other documents. OTS asserts that all documents that do not relate to particular institutions should be produced if they date from 1980 to the time of production. Ernst & Young, on the other hand, seeks a more limited time frame. Ernst & Young's proposal states that the time frame for the production of manuals, policies and peer reviews (Specifications 8–13) should be limited to the years 1984 to 1991, that the time frame for the production of internal reviews (Specification 14) and documents bearing the name of an institution, but excluding workpapers, (Specification 16) should be limited to the last two audit years for each institution, and that the time frame for the production of documents that relate to the production of documents pursuant to the subpoena (Specification 18) should be limited to the period running from the issuance of the subpoena until May 18, 1992.

Ernst & Young proposes more limited time periods because it claims that the burden of OTS's twelve year time frame for all documents that do not relate to a particular institution is "grossly overbroad and burdensome." OTS, in contrast, contends that Ernst & Young's proposed time frames are unacceptable because they would deprive OTS of information that is necessary to determine how the standards for Ernst & Young's auditing work evolved. Again, the court shall follow OTS' proposal. The court finds that the time frame proposed by OTS will allow it to conduct a proper and adequate investigation without being unduly burdensome on Ernst & Young.

A separate order shall issue this date.

### ORDER

Upon consideration of the Stipulated Order submitted by the parties and entered by the Court on April 16, 1992 and the memorandum opinion this date, and the entire record herein, it is this 16th day of April, 1992, hereby

ORDERED, that Ernst & Young shall, in addition to the documents set forth in the Stipulated Order, produce the documents specified below in response to the OTS subpoena (the "Subpoena") served upon it on June 11, 1992:

1. *Time Summaries and Diaries (Specification 6).* Ernst & Young shall produce documents described in Specification 6 of the subpoena for inspection by OTS representatives.

2. *Internal Reviews (Specification 14).* Ernst & Young shall produce documents described in Specification 14 of the subpoena for inspection by OTS representatives.

3. *Complaints (Specification 15).* Ernst & Young shall produce documents described in Specification 15 of the subpoena that relate to Ernst & Young's performance of professional services for inspection by OTS representatives.

IT IS FURTHER ORDERED that the following procedures shall apply to the production of all documents by Ernst & Young under the terms of either the Stipulated Order or this Order:

1. *Duplication & Preservation of Originals.* If the OTS representatives determine that it is necessary for the OTS to take custody of documents produced for inspection pursuant to the Subpoena, Ernst & Young shall provide the originals to OTS within 48 hours of notice of such determination; *provided, however,* that Ernst & Young may, at its own expense, copy such documents for its own use and retention prior to delivering such original documents to the OTS representatives; *and further provided, however,* that Ernst & Young may choose to retain the originals in its custody if it: (a) provides a copy of each such original document to OTS, at Ernst & Young's expense, within 48 hours; (b) maintains all such original documents in the order in which they were produced; and (c) makes any such original document available to OTS within 48 hours after a request for access to such document by the OTS. Ernst & Young shall inform the OTS if documents are color coded and shall accommodate the reproduction of color codes in copying the documents.

2. *Time Frame.*

(a) Ernst & Young shall produce documents responsive to Specifications 1 through 7 and 17 of the Subpoena that relate to a specific Institution for the time period relating to the last two audits performed by Ernst & Young for each such institution.

(b) Ernst & Young shall produce documents responsive to Specifications 8 through 12 and 18 of the Subpoena for the time period January 1, 1980 through the date of production.

3. *Claims of Privilege.* If Ernst & Young withholds any document responsive to the Subpoena by reason of a claim of privilege, Ernst & Young shall furnish an affidavit at the time the documents are produced identifying each document for which the privilege is claimed. With respect to each such document, Ernst & Young shall state the basis upon which the privilege is claimed, identify the specifications of the Subpoena to which the withheld document is responsive, and state the subject matter, number of pages, author, date created, and the identities of all persons to whom the original or any copies of the document were shown or provided.