Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.

Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.

United States District Court,
District of Columbia.

July 27, 1998.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiffs.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, Washington, DC, for defendant FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth, Arnold & Porter, New York City, for defendant Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for defendant Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., Robert Muze, Stein, Mitchell & Mezines, Washington, D.C., for defendant Anthony Marceca.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on plaintiffs' Motion to Compel Craig Livingstone to Produce Documents. Upon consideration of the submissions of the parties and the relevant law, plaintiffs' Motion to Compel Craig Livingstone to Produce Documents is granted in part and denied in part.

## I. *Background*

As stated in several opinions by this court, the underlying allegations in this case arise from what has become popularly known as "Filegate." According to their complaint, plaintiffs allege that their privacy interests were violated when the Federal Bureau of Investigation ("FBI") improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations.

During the course of the discovery phase of this case, plaintiffs served Craig Livingstone with a subpoena requiring the production of documents. Livingstone objected to the production of certain documents, thereby prompting plaintiffs to file the motion to compel presently before the court.

## II. *Analysis*

On January 13, 1998, plaintiffs served a subpoena duces tecum on Livingstone seeking the production of numerous categories of documents in connection with this case. On January 23, 1998, counsel for Livingstone served objections to plaintiffs' subpoena and subsequently produced documents and a privilege log on January 28, 1998.

Plaintiffs contend that Livingstone's document production is inadequate and assert that both the specific and general objections made by Livingstone are insufficient to permit him to withhold responsive documents. Specifically, plaintiffs argue that Livingstone's reliance on Rule 6(e) of the Federal Rules of Criminal Procedure and the assertion of the attorney-client privilege with respect to certain documents are in error and can not be used to justify the withholding of documents by Livingstone.

In response, Livingstone states that "[t]he only responsive, nonprivileged documents within Mr. Livingstone's possession, custody or control that were not produced in response to Plaintiffs' Subpoena are copies of the transcripts of Mr. Livingstone's depositions taken by the House Government Reform and Oversight Committee." Opp. to Pls.' Mot. to Compel at 4. Livingstone also states that his reliance on the assertion of

the attorney-client privilege and Rule 6(e) as stated in the privilege log as grounds for withholding certain documents is proper.[1]

## A. The Production of Livingstone's Deposition Transcripts

Livingstone contends that he produced all documents responsive to plaintiffs' subpoena with the exception of copies of the transcripts of his depositions taken by the House Government Reform and Oversight Committee. Livingstone states that the transcripts are readily obtainable from public sources and therefore, he should not be put to the burden and expense of producing these transcripts. In light of the fact that plaintiffs fail to contest the considerations raised by Livingstone, the court determines that plaintiffs are capable of obtaining the deposition transcripts from public sources without difficulty and therefore, Livingstone shall not be compelled to produce these transcripts.

## B. Privilege Log Submitted by Livingstone

■ In response to plaintiffs' subpoena for documents, Livingstone submitted a privilege log to plaintiffs specifying that certain documents were being withheld pursuant to the attorney-client privilege and Rule 6(e) of the Federal Rules of Civil Procedure. Standing alone, the claims of privilege as set forth in the privilege log are clearly inadequate to permit this court to determine whether the documents were properly withheld or to sustain a claim of privilege. As one court stated, an assertion of privilege requires identification of "the authors, dates of preparation, and subject matter of the documents, as well as facts establishing each element of the privilege claim." *United States v. Western Elec. Co., Inc.*, 132 F.R.D. 1, 3 (D.D.C.1990). At the very minimum, Rule 45(d)(2) of the Federal Rules of Civil Procedure requires that the privilege log in which a claim of privilege is advanced contain information "sufficient to enable the demanding party to contest the claim." Fed.R.Civ.P. 45(d)(2).

More specific considerations arise when a party specifies in a privilege log that a particular document is being withheld pursuant to the attorney-client privilege. In a previous case, this court considered and rejected a litigant's claims that it could withhold documents simply by claiming a "blanket privilege." *Director of OTS v. Ernst & Young*, 795 F.Supp. 7, 11–12 (D.D.C.1992). The defendant in that case argued that it could invoke the attorney-client privilege merely by furnishing the court with an affidavit swearing that the documents were prepared by or for the general counsel's office. This court explicitly rejected this argument and instead adopted plaintiff's proposed requirements for the "privilege log" that required the defendant to identify each withheld document and:

> state the basis upon which the privilege is claimed, . . . state the subject matter, number of pages, author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided.

*Id.* at 11–12. Despite the additional burden imposed on the defendant in that case, this court concluded that such information was necessary to determine whether the documents were truly privileged.

■ In *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir.1992), the Court of Appeals for the Ninth Circuit discussed the type of information that a party seeking to invoke the attorney-client privilege must include in a privilege log. The Ninth Circuit determined that a privilege log must identify:

> (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been fur-

---

1. It should be noted that plaintiffs attached to their motion to compel an earlier subpoena containing a schedule of documents to be produced. The parties had disputed whether proper service had been effected as to that subpoena. The court contacted counsel for both plaintiffs and Livingstone in an effort to obtain the subpoena actually served on Livingstone. Counsel for Livingstone provided this court with a copy of the subpoena on July 14, 1998. Counsel for plaintiffs subsequently contacted chambers by telephone and informed the court that the copy of the subpoena provided by counsel for Livingstone was in fact the subpoena actually served on Livingstone on January 13, 1998.

nished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.

*Id.* (quoting *Dole v. Milonas,* 889 F.2d 885, 888 n. 3, 890 (9th Cir.1989)). These requirements will ensure that a party seeking to insulate documents from disclosure has met the essential elements required for invoking the attorney-client privilege.[2] Because the Ninth Circuit's formulation of the requirements for a privilege log, like the requirements adopted by this court in *Ernst & Young,* are simply the embodiment of the indisputable prerequisites for claiming the attorney-client privilege, this court shall require the same. Therefore, the court holds that a party seeking to withhold documents under the attorney-client privilege, must at a minimum, provide the essential elements necessary to sustain a claim of privilege.

Livingstone's privilege log adequately identifies the author and dates of the documents and states the nature of the privilege. However, the descriptions of the withheld documents fall woefully short of what is required to permit this court to determine whether a particular privilege was properly asserted. Notwithstanding the inadequacy of these descriptions, the court's *in camera* inspection of these documents, as discussed below, permits a determination of whether the documents were properly withheld.

### C. The Withholding of Documents Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure

Livingstone seeks to withhold certain documents on the basis that Rule 6(e) of the Federal Rules of Criminal Procedure prohibits the disclosure of these materials because these materials have been turned over to a federal grand jury. In commenting on the disclosure of materials and testimony ac-

quired by the grand jury, the Supreme Court stated that "the proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). With certain limitations, Rule 6(e) recognizes the importance of this notion and imposes a general rule against disclosure of "matters occurring before the grand jury." Specifically, Rule 6(e) provides that:

> [a] grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made ... shall not disclose matters occurring before the grand jury except as otherwise provided for in these rules.

Fed.R.Crim.P. 6(e).

■ In accordance with the language of Rule 6(e), grand jury secrecy attempts to: (1) insure the safety of witnesses testifying before the grand jury; (2) encourage disclosure of information to the grand jury; (3) prevent perjury or tampering with witnesses; (4) prevent suspects from fleeing jurisdictions; and (5) protect the reputations of innocent individuals who are exonerated by grand jury investigations. *See United States v. Sells Eng'g, Inc.,* 463 U.S. 418, 424, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983); *Douglas Oil Co.,* 441 U.S. at 219, 99 S.Ct. 1667.

■ Despite the language in Rule 6(e), no per se rule exists against disclosure of any and all information reaching the grand jury. *See Senate of Puerto Rico v. Department of Justice,* 823 F.2d 574, 583 (D.C.Cir.1987). Indeed, Rule 6(e) does not require that "a veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand jury." *SEC v.*

---

**2.** The elements of the attorney-client privilege have been succinctly stated as follows:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c)

for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case,* 737 F.2d 94, 98–99 (D.C.Cir. 1984) (quoting *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass. 1950)).

*Dresser Indus., Inc.,* 628 F.2d 1368, 1382 (D.C.Cir.1980). In *Senate of Puerto Rico,* the Court of Appeals provided the applicable standard for determining whether grand jury materials may be disclosed by stating that "the touchstone is whether disclosure would 'tend to reveal some secret aspect of the grand jury's investigation' such matters as 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.'" 823 F.2d at 582 (quoting the trial court). *See also United States v. Benjamin,* 852 F.2d 413, 417 (9th Cir.1988) ("The cases seem to agree that the touchstone of Rule 6(e)'s applicability is whether the disclosed materials would 'elucidate the inner workings of the grand jury.'") (quoting *Senate of Puerto Rico,* 823 F.2d at 583).

■■■ As demonstrated in the instant case, "matters occurring before the grand jury" as specified in Rule 6(e) may encompass documents, as well as grand jury transcripts. *Dresser Indus., Inc.,* 628 F.2d at 1383; *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir.1960). However, documents are not cloaked with secrecy merely because they are presented to a grand jury. *See Dresser Indus., Inc.,* 628 F.2d at 1382. *See also United States v. Lartey,* 716 F.2d 955, 964 (2d Cir.1983). Indeed, requests for documents that have been subpoenaed by a grand jury necessitate different and less exacting considerations than requests for grand jury transcripts, especially when such documents were in existence prior to the inception of the grand jury investigation. *See In re Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d 1079, 1089 (7th Cir.1982) ("A request for grand jury documents may evoke different, and less exacting considerations than a request for transcripts of grand jury testimony."); *SEC v. Everest Management Corp.,* 87 F.R.D. 100, 105 (S.D.N.Y.1980) (same). Documents generated independently of grand jury investigations typically are more likely to fall outside the framework of the protections afforded by Rule 6(e) than those generated explicitly for grand jury proceedings. *See Dresser Indus.,*

*Inc.,* 628 F.2d at 1383. When documents are sought for their own sake and not to learn what transpired before the grand jury, and the release of such documents would not compromise the grand jury proceedings, Rule 6(e) should not be construed to preclude their disclosure. *Senate of Puerto Rico,* 823 F.2d at 582–83. In sum, the issue of whether Rule 6(e) applies to prohibit disclosure requires a determination of whether "some affirmative demonstration of a nexus between disclosure and revelation of a protected aspect of the grand jury's investigation" can be demonstrated. *Id.* at 584. *See also Washington Post Co. v. Department of Justice,* 863 F.2d 96, 100 (D.C.Cir.1988).

■■■ In the instant case, plaintiffs' subpoena, in part, requires Livingstone to produce the following documents:

16. Any and all records, correspondence, notes, communications or other documents produced pursuant to a Congressional subpoena, grand jury subpoena, or a voluntary agreement with the Department of Justice or other official investigatory agency of the United States, including the office of Independent Counsel Kenneth Starr, concerning or relating to the disclosure to White House personnel (including employees, detailees, volunteers, and interns) or to other persons in the White House (including Hillary Rodham Clinton), of FBI background investigation files or summary reports on former Reagan and Bush Administration appointees and employees, and others.[3]

17. copies of any subpoena(e) or voluntary agreement(s) for the documents described in Request Number 1.

Subpoena Served on Craig Livingstone on January 13, 1998 at 7. The court will first consider plaintiffs' request for the production of the grand jury subpoena issued to Livingstone. It is evident that production of a copy of any subpoena(s) issued by a grand jury to Livingstone is necessarily prohibited by Rule 6(e). Production of such a subpoena would certainly elucidate the inner workings of the grand jury and would expose the strategy and direction of the investigation. Accordingly, Livingstone will not be required to

**3.** Request 14 contains largely duplicative language.

provide plaintiffs with a copy of any subpoena issued by a grand jury.

■ A blanket request for the production of all materials produced pursuant to a grand jury subpoena is equally prohibited by Rule 6(e). Plaintiffs' request is styled specifically to "piggyback" onto the Independent Counsel's investigation of the Filegate matter. A general request for the production of all relevant materials bearing on the Filegate matter that have been turned over to the grand jury would certainly reveal the direction of the grand jury's investigation on this particular matter and production of these materials pursuant to this request is prohibited. *See, e.g., United States v. Stanford,* 589 F.2d 285, 291 n. 6 (7th Cir.1978) ("A general request for 'all documents collected or received in connection with the investigation of antitrust violations . . . ,' for example, would be in effect a disclosure of the grand jury proceedings; the documents are significant because they were before the grand jury."); *Board of Educ. of Evanston Township High Sch. Dist. No. 202 v. Admiral Heating and Ventilation, Inc.,* 513 F.Supp. 600, 603–04 (N.D.Ill.1981); *Falstaff Brewing Corp. v. Kessler,* 489 F.Supp. 191, 194 (E.D.Wis.1980) ("[T]he petitioners' subpoena requests all subpoenas issued for the grand jury and all documents in evidence before the grand jury. Such a broad request would reveal not only the information contained in specific documents, but the pattern of the grand jury's entire investigation.").

■ Although the documents Livingstone produced to the grand jury may not be produced pursuant to a general request for all relevant grand jury materials, almost all of these materials are clearly responsive to other, more specific requests for documents made by plaintiffs. In an order dated July 6, 1998, this court required Livingstone to produce these documents to the court for an *in camera* inspection. Although the opposition to plaintiffs' motion to compel states that "Mr. Livingstone did not withhold from production any documents sought in Plaintiffs' subpoena solely because they may have been produced to the grand jury," Opp. to Pls.' Mot. to Compel at 7, a review of the privilege log submitted by Livingstone and the court's

*in camera* inspection of the documents withheld by him demonstrates that this statement is not true. The court is simply unaware of how Livingstone can make such a statement in good faith as the privilege log specifically identifies six sets of documents as being withheld solely pursuant to Rule 6(e).

Having conducted the *in camera* inspection of these documents, the court concludes that the documents with the following Bates stamped pages are responsive to more specific requests contained in plaintiffs' subpoena and production of these documents is not prohibited by Rule 6(e): LIV–0367–69; LIV–0370; LIV–0371; LIV–0373–0429; LIV–0432–37; LIV 0442–50; LIV–0451–53; and LIV 0454–0501. These documents are sought "for their own sake" and do not reflect an effort by plaintiffs to simply mirror an ongoing criminal investigation before a grand jury. *See Interstate Dress Carriers, Inc.,* 280 F.2d at 53 ("[W]hen testimony or data is sought for its own sake . . . rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury."). The documents at issue were created for an independent purpose, "not directly related to the prospect of a grand jury investigation," *Dresser Indus., Inc.,* 628 F.2d at 1383, and standing alone in response to plaintiffs' specific requests do not elucidate the inner workings of the grand jury or the scope or direction of its investigation.

The documents withheld by Livingstone are relevant to six requests made by plaintiffs. These requests include: (1) request 5 seeking "Any and all records, correspondence, notes, communications, and other documents concerning or relating to any communications with any Defendant or any person or persons initially named as a Defendant in this case regarding FBI files, their contents, the circumstances under which the Clinton White House obtained possession of those files, or any investigation of those circumstances;" (2) request 6 seeking "Any and all records, correspondence, notes, communications, and other documents concerning or

relating to the dissemination of the FBI background investigation files and/or summary reports to any persons in the White House, to any agencies or entities of the Executive, Legislative, or Judicial Branches of the United States Government, to any foreign governments, and/or to any private person(s) or entity(ies);" (3) request 8 seeking "Any and all records, correspondence, notes, communications, and other documents concerning or relating to any communications with any officer, employee or agent of the Executive Office of the President regarding the FBI files, their contents, the circumstances under which the Clinton White House obtained possession of those files, or any investigation of those circumstances;" (4) request 10 seeking "Any and all records, correspondence, notes, communications, and other documents concerning or relating to the appointment or hiring of D. Craig Livingstone to a position in the Clinton White House, his duties at the White House, his qualifications to perform those duties, including any job descriptions, duties, assignments, or instructions;" (5) request 11 seeking "Any and all records, correspondence, notes, communications, and other documents concerning or relating to the detailing of Anthony Marceca to the White House or the extension of that detail, his duties at the White House, his qualifications to perform those duties, or his performance of those duties, including any job descriptions, duties, responsibilities, assignments, or instructions;" and (6) request 13 seeking "Any and all desk calendars, appointment books, journals, logs, and/or diaries maintained by you from November 1, 1992 until the present day."[4] It is the conclusion of the court that the documents identified by the court above are responsive to these requests and that disclosure of these documents does not violate Rule 6(e).

The foregoing considerations and the court's *in camera* inspection of the documents aptly illustrate to the court's satisfaction that given the nature of these documents and the fact that these documents existed independent of the grand jury investigation,

plaintiffs' need for the documents outweighs any need for secrecy. Although Livingstone is being ordered to produce a large portion of the grand jury materials that he previously withheld, the court does not believe that any secret aspect of the grand jury's investigation will be revealed by this production. The nature of the documents and the fact that the entire universe of grand jury materials will not be produced, viewed in light of the purpose of Rule 6(e), assures the court that disclosure is appropriate. As such, Livingstone shall produce these documents to plaintiffs forthwith.

### D. The Withholding of Documents Pursuant to the Attorney–Client Privilege

Livingstone has withheld certain other documents pursuant to a claim that the documents are covered by the attorney-client privilege. These documents were also delivered to the court by Livingstone for an *in camera* inspection. Of the documents withheld by Livingstone on the basis of this privilege, the court concludes that the documents with the Bates stamped pages LIV–0515–26 are responsive to plaintiffs' subpoena. Having made this determination, the court must consider whether the attorney-client privilege prohibits disclosure of these documents.

Attorney-client communications ordinarily are privileged, and thus are protected from discovery by a party opponent under Rule 26(b) of the Federal Rules of Civil Procedure. "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 618 (D.C.Cir.1997). Specifically, information is protected by the privilege if it relates to a fact conveyed to a lawyer by the client. *See United States v. Sayan*, 968 F.2d 55, 63 (D.C.Cir.1992) (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir. 1984)). Furthermore, "[c]ommunications from attorney to client are privileged only if

---

4. Livingstone objects to some of these requests, in part, on the ground that these requests are over broad. The court notes that by construing these requests to only apply to documents within Livingstone's possession or control, the concerns regarding the over breadth of these requests are effectively eliminated.

they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir.1990) (citing *In re Sealed Case*, 737 F.2d at 99). *See also In re Sealed Case*, 737 F.2d at 98–99 (stating the requirements for the invocation of the attorney-client privilege).

▮▮▮ The document with the Bates stamped pages LIV–0515–23 is a pre-existing document sent to Livingstone's attorney from a congressional committee setting forth written follow-up questions the committee was requiring Livingstone to answer. The delivery of this document to Livingstone's attorney is closely analogous to the scenario where a third-party prepares a document and this document is then given by the client to his attorney in the course of seeking legal advice. In such a case, the document does not become privileged merely because it is delivered to an attorney. *See, e.g., In re Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991*, 959 F.2d 1158, 1165 (2d Cir.1992) ("Documents created by and received from an unrelated third party and given by the client to his attorney in the course of seeking legal advice do not thereby become privileged.") (citing *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)); *Brinton v. Department of State*, 636 F.2d 600, 604 (D.C.Cir.1980) (stating that "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged") (footnote omitted). The court can perceive of no reason why the instant case should be treated any differently. The pre-existing document delivered to Livingstone's attorney simply does not constitute a confidential dis-

closure by a client to an attorney made in order to obtain legal assistance and the attorney's transmittal of the questions to his client does not then make the document privileged. *See, e.g., Defazio*, 899 F.2d at 635 (noting that information is not privileged simply because it comes from an attorney). Indeed, there is no communication in this document between Livingstone and his counsel with respect to the document itself. In contrast, communications between Livingstone and his counsel pertaining to this document may very well be privileged. Therefore, Livingstone shall forthwith produce the document with the Bates stamped pages LIV–0515–23.

▮▮▮ Documents with the Bates stamped pages LIV–0524–26 are described in the privilege log as "[d]raft of document prepared by Craig Livingstone." The court concludes that there is absolutely no indication that these documents were properly withheld on the basis of the attorney-client privilege. There is no showing that the documents relate to any communication between Livingstone and his counsel for the purpose of securing legal advice or services. While it is certainly *conceivable* that counsel assisted Livingstone in the preparation of these so-called drafts, "the party asserting attorney-client privilege bears the burden of proving the applicability of the privilege by way of affidavits or other competent evidence." *Odone v. Croda Int'l PLC*, 950 F.Supp. 10, 12 (D.D.C.1997). In this regard, the party asserting the privilege must offer more than conclusory statements. *Id.* Livingstone has simply not sustained his burden with respect to these documents.[5] Accordingly, Livingstone shall also produce documents with the Bates stamp pages LIV–0524–26 forthwith.[6]

---

5. In the opposition to plaintiffs' motion to compel, counsel for Livingstone asserts that "[t]o the extent there is any doubt as to whether such communications are covered by the attorney client privilege, undersigned counsel represents that each document *relates to* the preparation of written responses by Mr. Livingstone to interrogatories posed by Senator Hatch and Biden in connection with the Senate hearings on the FBI Files matter." Opp. to Pls.' Mot. to Compel at 8 (emphasis supplied). This representation is not an adequate substitution for what is required to support the assertion of the attorney-client privilege.

6. Request 18 of plaintiffs' subpoena seeks the production of "Any and all records, correspondence, notes, communications or other documents which are relevant to the allegations of the complaint, and any and all records, correspondence, notes, communications or other documents which may lead to such relevant evidence." Request 19 seeks "Any and all records, correspondence, notes, communications, or other documents which relate to any of the matters described in the Complaints in *Alexander et al. v. FBI et al.*, Civil Action No. 96–2123(RCL) and *Grimley et al. v. FBI et al.*, Civil Action No. 97–1288(RCL)." While the remaining materials withheld under claims of the attorney-client priv-

### E. Supplemental In Camera Submissions

Livingstone's piecemeal production of documents in this case necessitates a full exploration of the events preceding the issuance of this Memorandum and Order. On July 6, 1998, this court ordered Livingstone to produce for *in camera* inspection, the documents identified in Livingstone's privilege log. This inspection was required due to the inadequacy of the privilege log as discussed in Part II.B. Among the documents produced *in camera* were three documents that included substantial redactions. These documents were Bates stamped LIV–502–04, LIV–507, and LIV–508. A privilege log with the Bates stamped pages LIV–505–06 was also appended to one of the redacted documents. The documents referenced in the privilege log did not correspond to any documents previously submitted to the court *in camera.*

On July 21, 1998, this court directed that counsel for Livingstone deliver to the court unredacted copies of the documents with the Bates stamped pages LIV–502–04, LIV–507, and LIV–508 and explain the whereabouts of the documents referenced in the privilege log with the Bates stamped pages LIV–505–06. In correspondence submitted to the court *in camera,* counsel stated that the submission of the redacted documents was an oversight and the court does not dispute this. The redacted portions of these documents have now been reviewed *in camera,* and are not responsive to plaintiffs' subpoena.

More troubling, however, was counsel's response to the court's inquiry regarding the documents referenced in the privilege log. Counsel explained that the documents listed in the privilege log were not originally produced in response to plaintiffs' subpoena because he determined that these documents were unresponsive. Upon his re-examination of these documents before producing them for *in camera* examination,

Livingstone's counsel identified seven additional pages that were, in fact, responsive to plaintiffs' subpoena yet were not originally produced. These are the documents with the Bates stamped pages LIV–0536–42. According to Livingstone's counsel, these documents were delivered to plaintiffs in a supplemental submission on July 22, 1998. Given the disconcerting nature of the document production by Livingstone to that point, the court directed counsel to produce the remaining documents withheld as unresponsive for *in camera* inspection.

On July 22, 1998, counsel provided this court with a second supplemental submission of documents for *in camera* review. Upon review of these documents, the court concludes that additional materials are responsive to plaintiffs' subpoena as well. In addition to the seven pages initially withheld as unresponsive but subsequently produced to plaintiffs on July 22, 1998, the documents with the following Bates stamped pages are also responsive to plaintiffs' subpoena: DCL139; DCL140; DCL141; DCL144; DCL159–68; DCL188–89; and DCL201–02.[7]

Among these documents, only the document with the Bates stamped pages DCL159–63 facially seems to be protected by the attorney-client privilege. This document involves a communication from Livingstone to his counsel, referenced as an "Attorney/Client Privilege Summary," dated, and apparently drafted for the purpose of securing legal advice and counsel. However, it cannot be determined whether this document meets all the requirements for the invocation of the attorney-client privilege. For example, there is no listing of all individuals to whom the document has been disclosed. Accordingly, Livingstone shall either produce this document to plaintiffs or fully support the claim that the document is privileged.

Given the responsive nature of the remaining documents and the fact that they do not

---

ilege and Rule 6(e) could be considered responsive to these requests, the court has previously determined similarly-worded requests to be overbroad when plaintiffs have sought to compel the production of documents from other witnesses. Therefore, it is the conclusion of the court that it would be inappropriate to require Livingstone to

produce the withheld documents pursuant to either requests 18 or 19.

7. These documents are responsive to request 10 which seeks all documents relating to the hiring of Livingstone, his duties at the White House, and the performance of those duties.

appear on their face to be privileged, Livingstone must also either produce these documents or assert any applicable privilege. If Livingstone asserts an evidentiary privilege with respect to these documents, he shall do so in accordance with the standard set forth in Part II.B. of this Memorandum and Order. Livingstone is not required to produce the document with the Bates stamped page DCL139, as this document has been previously produced to plaintiffs in a properly redacted form as social security numbers and dates of birth have been redacted from the document.

The court must express its dismay at the manner in which Livingstone's document production has proceeded thus far. But for the court's request to review the documents withheld *in camera,* several documents would never have been produced to plaintiffs. While a party may properly withhold documents and assert any appropriate evidentiary privilege, a court's request for an *in camera* inspection should not cause what occurred here. Documents are not chameleonic. They are either responsive or they are not. Once a party subpoenas certain documents, responsive, non-privileged documents should be produced. Any other method of production is simply improper.

III. *Conclusion*

For the reasons stated herein, plaintiffs' Motion to Compel Craig Livingstone to Produce Documents is GRANTED IN PART and DENIED IN PART as follows. Livingstone shall produce documents previously withheld pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure and the attorney-client privilege with the following Bates stamped pages: LIV–0367–69; LIV–0370; LIV–0371; LIV–0373–0429; LIV–0432–37; LIV 0442–50; LIV–0451–53; LIV 0454–0501; and LIV–0515–26. Livingstone shall also forthwith produce to plaintiffs documents with the Bates stamped pages DCL140, DCL141, DCL144, DCL159–68, DCL188–89, and DCL201–02 or assert any applicable evidentiary privilege in accordance with the standard set forth in this Memorandum and Order. Livingstone is not required to produce the documents with the following Bates

stamped pages: LIV–0355–66; LIV–0372; LIV–0430–31; LIV–0438–41; LIV–0502–14; DCL136–37; DCL142–43; DCL151–58; DCL169–87; DCL190–200; DCL203–32, as *in camera* review establishes that these documents are not responsive to plaintiffs' subpoena. Livingstone is also not required to produce documents with the Bates stamped pages DCL138 and DCL145–50 as these documents are duplicative of documents with the Bates stamped pages LIV–0536–42 which have already been produced to plaintiffs or DCL139 as this document has been produced to plaintiffs in a properly redacted form.

SO ORDERED.