Cara Leslie **ALEXANDER,** et al., Plaintiffs,

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

Nos. CIV. 96–2123, CIV. 97–1288(RCL).

United States District Court, District of Columbia.

March 6, 2000.

Larry Klayman, Judicial Watch, Inc., Washington, D.C., for Plaintiffs or Petitioner.

David W. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, United States Attorney, Anne Weismann, James J. Gilligan, Elizabeth Shapiro, U.S. Department of Justice, Washington, D.C., for Defendants EOP and FBI.

David E. Kendall, Marcie Ziegler, Williams & Connolly, Washington, D.C., for Defendant Hillary Rodham Clinton.

Leslie Kiernan, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P., Washington, D.C., for Thomas McLarty, III.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Plaintiffs' Motion to Compel Further Deposition Testimony and Production of Documents from Thomas F. McLarty, III. Upon consideration of the written submissions of the parties and the relevant law, the court will GRANT IN PART and DENY IN PART plaintiffs' motion, as discussed and ordered below.

### I. *Background*

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations.

The current dispute revolves around the deposition of Thomas F. McLarty, III, White House Chief of Staff from January 1993 to June 1994, and thereafter Counselor to the President and Special Envoy for the Americas until July 1998. Plaintiffs deposed McLarty on August 5, 1998. At the beginning of this deposition, McLarty produced a privilege log listing 52 documents that he was withholding based on the attorney-client and work-product privileges. However, the log was incomplete with respect to many of the documents listed.[1] In addition, the log included several documents prepared by external sources, such as newspaper articles and White House memoranda. Accordingly to the log, these documents were not pro-

duced on the basis that they also contained McLarty's handwritten notations for counsel.

After reviewing the privilege log, the plaintiffs filed this motion to compel McLarty to submit all documents listed on the log to the court for *in camera* inspection. In their motion, the plaintiffs petition the court to compel McLarty to produce to them all documents not protected by the asserted privileges. They further request that, if necessary, McLarty be compelled to appear for a second deposition to testify regarding any documents withheld improperly. On January 28, 2000, the court directed that McLarty submit the documents to the court for *in camera* inspection. The documents were subsequently filed with the court on February 4, 2000. Upon its *in camera* review of the documents, the court will now consider the plaintiffs' request to compel further deposition testimony and the production of documents from Thomas McLarty.

### II. *Analysis*

#### A. Relevancy

Plaintiffs can only obtain "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" or "information reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). McLarty argues that several of the documents at issue are irrelevant, and therefore undiscoverable as they relate to the White House Travel Office investigation (also known as "Travelgate"). This court has previously ruled that most matters regarding Travelgate are not relevant to the instant case. *See Alexander v. FBI*, 186 F.R.D. 123, 125–26 (D.D.C.1998). As this court stated:

the only apparent connection in substance between it [Travelgate] and the current case is the possible misuse of the government file of Billy Dale, a former Travel Office employee. Although the plaintiffs are certainly entitled to inquire into the obtaining and misuse of Dale's government file, this common thread cannot lead to the discoverability of any and all Travelgate matters.

*Id.* Per review of the privilege log and *in camera* review of the documents, most of the

---

1. The date prepared, author, and recipient were     left blank for many of the documents.

documents pertain only to Travelgate and do not involve Billy Dale's file. Therefore, they are irrelevant to the pending action, and they are not discoverable by the plaintiffs. Accordingly, the court will now turn its analysis only to the remaining documents.

## B. Attorney–Client Privilege

■ The following documents listed on the privilege log are relevant to the pending case: Bates No. P287, P289–91, P293–300, P302, and P304–14. Therefore, the plaintiffs have met their initial burden as to these documents, and the burden now shifts to McLarty to prove that the documents are privileged. As the party asserting the attorney-client privilege, McLarty must demonstrate "the applicability of the privilege by way of affidavits or other competent evidence." *Alexander v. FBI*, 186 F.R.D. 102, 111 (D.D.C.1998) (citing *Odone v. Croda Int'l PLC*, 950 F.Supp. 10, 12 (D.D.C.1997)). At a minimum, McLarty must provide the court with evidence supporting each of the essential elements necessary to sustain a claim of privilege.[2] *See Alexander*, 186 F.R.D. at 107.

■ As noted above, McLarty produced a privilege log at the beginning of his deposition in this case. This court has previously addressed what a privilege log must identify. In its Memorandum and Order of July 27, 1998, the court held that the essential elements a party must provide to sustain a claim of attorney-client privilege are:

> (a)the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared or dated.

*Alexander*, 186 F.R.D. at 106–07 (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir.1992)). The log provided by McLarty contained columns for the date of each document, a brief description, the author, recipient, others furnished the document, and the privilege asserted. However, for most of the relevant documents, the log fails to identify the date prepared, the author or the recipient. In addition, the descriptions of the documents are so brief and of such a general nature that they fail to give the court any basis for determining whether the privilege was properly invoked. Therefore, the privilege log fails to establish that the documents are properly being withheld.

■ McLarty and his attorney Leslie Kiernan also provided the plaintiffs and the court with sworn declarations regarding the documents at issue. Although McLarty may establish the applicability of the privilege asserted through affidavits, he must offer more than just conclusory statements. *Alexander v. FBI*, 186 F.R.D. at 111. In his declaration, McLarty states that "[e]ach of the documents listed on the privilege log ... was collected and prepared in anticipation of the congressional and Independent Counsel investigations." McLarty Declaration at 3. He further states that in preparation for his testimonial appearances, he and his attorneys "gathered or generated" material, which they "regularly discussed." *Id.* at 2–3. McLarty's counsel, Leslie Berger Kiernan, states in her declaration that "[t]he production of these documents [listed on the privilege log] would reveal information that Mr. McLarty provided to his attorneys in confidence." *See* Kiernan Declaration at 2. The declarations fail to provide any specific information, however, such as when the documents were created, what attorneys actually received them and when, and the names of other persons, if any, who were given the documents. Such general and conclusory declarations fail to satisfy McLarty's burden of demonstrating

---

2. This court has previously stated the elements of the attorney-client privilege as follows:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

> *Alexander,* 186 F.R.D. at 106 (quoting *In re Sealed Case,* 737 F.2d 94, 98–99 (D.C.Cir.1984)).

the applicability of the privilege to the documents withheld.

Given that McLarty failed to sustain his burden with his privilege log and declarations, the court reviewed the documents *in camera* in order to determine whether the privilege was properly invoked. Upon this review, the court finds that some of the relevant documents (those labeled Bates No. P287, P289–91, P295–97, P311–14) indicate on their face that they were given to attorneys for the purpose of securing advice and list the attorneys to whom the document was sent. Therefore, the court finds that McLarty has met his burden for these documents.

■ For the remaining relevant documents, however, there is absolutely no indication that they were properly withheld on the basis of the attorney-client privilege. These documents consist of newspaper articles containing nondescript notations, such as underlining and circles. There is no showing that these documents were made by McLarty for the purpose of securing legal advice.[3] Thus, McLarty has not met his burden of establishing that these documents are in fact entitled to protection by the attorney-client privilege.

### C. Work–Product Privilege

■ Similarly, McLarty has also failed to sufficiently establish that the work-product privilege applies to the withheld documents.

The work-product privilege applies to documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." FED. R.CIV.P. 26(b)(3). "[T]he burden of showing that the materials were prepared in anticipation of litigation is on the party asserting privilege." *Compagnie Francaise d'Assurance v. Phillips Petroleum Co.*, 105 F.R.D. 16, 40 (S.D.N.Y.1984). This burden entails a showing that the documents were prepared for the purpose of assisting an attorney in preparing for litigation, and not for some other reason. *See Athridge v. Aetna Casualty and Surety Co.*, 184 F.R.D. 200, 205 (D.D.C.1998) (holding that to qualify for the work-product privilege, documents must be prepared to "assist an attorney in preparing for trial or for use at that trial.") As discussed above, McLarty fails to demonstrate this sufficiently.

■ In addition, the policy underlying the work-product privilege further supports this court's finding that McLarty has not sustained his burden. "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *U.S. v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Upon review of the remaining documents at issue, the court finds that the documents do not reveal the mental impressions

---

3. As plaintiffs correctly note, "[a] document does not become privileged merely because it is delivered to an attorney." *Alexander v. FBI*, 186 F.R.D. at 111. Rather, "the test is whether the document *first* came into existence as part of a communication to an attorney." 8 WIGMORE, EVIDENCE § 2307 (rev. ed.1961) (emphasis added). Therefore, in order to establish privilege, McLarty must clearly demonstrate that his motive for making the notations was to communicate with his counsel for the purpose of securing legal advice. McLarty, however, fails to do so. The closest McLarty comes to making this showing is his general statement in his declaration that he "always considered such notations to be attorney-client communications made for the purpose of securing legal advice." McLarty Declaration at 3. This, however, only addresses his belief, whether it be correct or incorrect, that the attorney-client privilege protects these documents. It does not address his motive for making the notations at issue. Furthermore, McLarty .fails to demonstrate that these documents were ever entrusted to counsel. *See Zucker v. Sable*, 72 F.R.D. 1, 3 (S.D.N.Y.1975) (holding that the at-torney-client privilege did not apply to documents that were not entrusted to the attorney). McLarty states in his declaration that he, and not his attorneys, retained the documents. McLarty Declaration at 3. He does not state, and there is no evidence indicating, that these materials were ever in fact given to counsel. Similarly, Kiernan's declaration fails to state that she ever received the documents. Rather, she states generally that "the production of these documents would reveal information that Mr. McLarty provided to his attorneys." Kiernan Declartion at 2. The only information contained in these particular documents, however, are publicly-disclosed facts written by third parties, i.e. newpaper columnists. While communications between McLarty and counsel regarding these documents may be privileged, these documents themselves are not privileged unless the notations made represent those communications, and thus clearly reveal those facts McLarty specifically discussed with counsel. In addition, as discussed above, declarations consisting of only general and conclusory statements are insufficient to satisfy McLarty's burden.

or conclusions of McLarty's attorneys, or even McLarty himself. Thus, given that McLarty has failed to sustain his burden with respect to several of the documents, the court will order him to produce those documents-those labeled Bates. No. P293–94, P298–300, P302, P304–310–to the defendants. Based on its *in camera* review of these documents, however, the court finds that it is not necessary to compel further testimony from McLarty.

### III. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS Plaintiffs' Motion to Compel Further Deposition Testimony and the Production of Documents from Thomas F. McLarty is GRANTED IN PART and DENIED IN PART. In this regard, the court ORDERS that:

1. Plaintiffs' request to compel documents with respect to those documents labeled Bates. No. P293–94, P298–300, P302, P304–310 is GRANTED. McLarty shall produce these documents to the defendants.

2. Plaintiffs' request to compel all other documents listed on the privilege log is DENIED.

3. Plaintiffs' request to compel further testimony from Thomas F. McLarty is DENIED.

SO ORDERED.