Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.

Civ.A. Nos. 96–2123, 97–1288(RCL).

United States District Court,
District of Columbia.

June 5, 2000.

---

**319**

Larry Klayman, Judicial Watch, Inc., Washington, D.C., for plaintiffs.

David W. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, United States Attorney, Anne Weismann, James J. Gilligan, Elizabeth Shapiro, U.S. Department of Justice, Washington, D.C., for defendants EOP and FBI.

David E. Kendall, Marcie Ziegler, Williams & Connolly, Washington, D.C., for defendant Hillary Rodham Clinton.

*MEMORANDUM OPINION*

LAMBERTH, District Judge.

This matter comes before the court on Plaintiffs' Supplemental Brief to their Motion to Compel the Production of Documents Regarding their Second Request to the Executive Office of the President ("EOP") Regarding ARMS E-mail. This court issued a prior ruling, on May 17, 2000, on the Plaintiffs' Motion to Compel the Production of Documents. In that order, however, the court deferred on the plaintiffs' requests as to e-mails and hard drives. The parties then filed supplemental memoranda regarding the plaintiffs' request for an ARMS search of e-mail. Upon consideration of these memoranda, and the reply and surreply thereto, the court will GRANT IN PART AND DENY IN PART the plaintiffs' request for an ARMS e-mail search, as discussed and ordered below. The court will continue to DE-

FER on the plaintiffs' requests for hard drives and those e-mails that are not archived on the ARMS system.

## I. Background

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush Administrations.

The instant dispute revolves around the discovery of e-mails relevant to the pending action. In their first request for the production of documents, served on October 9, 1997, the plaintiffs made several document requests, including e-mails, of various individuals. The EOP responded to these requests by stating that responsive documents "will be produced as they are located." *Alexander v. F.B.I.*, 1997 WL 1106579, at *1 (D.D.C.1997). Plaintiffs then filed a motion to compel regarding their first request on December 5, 1997. In response, the EOP filed a motion to strike the plaintiffs' motion due to the fact that the plaintiffs had not conferred with the EOP before filing it, as required by Local Rule 108(m). On December 22, 1997, the court granted the EOP's motion to strike the plaintiffs' motion to compel and stated that it would not entertain any motions to compel filed by the plaintiffs until after a further status conference scheduled for January 13, 1998.[1] *Id.*

Negotiations between the parties regarding the plaintiffs' motion to compel ensued, and most of the issues were resolved. With regard to the e-mails, the EOP admitted that it had not performed any search of the e-mail systems and computer hard drives in response to the plaintiffs' first request for the production of documents. The EOP suggested that, rather than perform several piecemeal searches in response to the plaintiffs' requests for documents, the parties meet and agree on a reasonable number of relevant individuals' e-mail to be searched and a reasonable set of search terms. *See* Opp'n by Def. EOP to Pls.' Mot. to Compel Docs. Regarding Second Request to the EOP at 30, n. 31. *See* Tr. of March 10, 2000 Hearing at 30 (statement of James Gilligan that since January of 1998 the EOP has asserted that the proper way to handle the discovery of e-mails is to conduct one, global search of all e-mail, rather than piecemeal searches, performed as the case progressed, which "cumulatively would impose an undue burden.") The EOP further stated that it was currently engaging in a process of restoring and reconstructing pre-July 14, 1994 e-mail[2], and, once that process was complete, a global e-mail search could be conducted on-line. *See id.* at 29; Decl. of Daniel Barry at ¶ 10 (March 4, 1998)(describing e-mail restoration process and estimating completion dates).

Plaintiffs then served their second set of requests for the production of documents on October 27, 1998. Request number 28 of this set of requests sought all e-mail correspondence to or from five individuals that was recovered in previous e-mail searches performed by the EOP as described by Daniel Barry, a computer specialist employed by the EOP Office of Administration, Information Systems and Technology Division (IS & T), in his June 11, 1998 deposition. The EOP objected to this request as overbroad and irrelevant. The EOP further responded that it "stands ready, as previously offered, to perform searches of archived White House e-mail within parameters as to date, users, and search terms reasonably calculated to lead to the discovery of relevant information without imposing an undue burden on the EOP."

---

1. The court also stated in its December 22, 1997 order that the EOP's responses indicating that they will produce documents "as they are located" are "unacceptable." *Alexander v. F.B.I.*, 1997 WL 1106579, at *1–2 (D.D.C.1997)(quoting *Association of American Physicians and Surgeons, Inc. v. Hillary Rodham Clinton*, 837 F.Supp. 454 (D.D.C.1993)). The court reasoned that "[i]n effect, defendants have sought to arrogate to themselves an indefinite extension of time in which they may respond to plaintiffs' discovery requests." *Id.* The instant dispute illustrates that point.

2. According to the Barry declaration, starting on July 14, 1994, the EOP began archiving its e-mail in an on-line format susceptible to being word searched. *See* EOP Opp. To Plaintiffs' Motion to Compel at 28.

EOP Resp. to Pls.' Second Req. for Produc. of Docs. at 26.

On April 8, 1999, the parties conducted a Rule 108 conference prior to the plaintiffs' filing of their motion to compel for their second set of requests for documents. At this conference, the plaintiffs were informed that the e-mail restoration process was almost complete and that certain e-mail was available for searching. Accordingly, the plaintiffs then submitted in their motion to compel a "preliminary list" of approximately 40 persons whose e-mail should be searched and 36 relevant search terms. The EOP objected to this request as so markedly different in scope as to constitute an entirely new request. They further rejected the plaintiffs' request on the grounds that it is overly broad, seeks irrelevant information, and would impose an undue burden on the EOP. To support its claim of undue burden, the EOP provided another affidavit by Daniel Barry, which stated that the proposed search would cost approximately $687,180. *See* Decl. of Daniel Barry at ¶ 12 (July 9, 1999).

The plaintiffs replied that the change in their request for e-mails was a result of the fact that, at the parties' Local Rule 108 conference, in addition to informing the plaintiffs for the first time that all but two months of the e-mails were prepared to be searched, the EOP specifically and repeatedly invited the plaintiffs to submit a list of individuals whose e-mail should be searched and a list of search terms. Therefore, they argued, the parties were simply disagreeing about the number of terms and individuals for the initial search. They then proposed a narrower "initial" search of eleven individuals' e-mail for thirteen search terms.

There have been numerous recent developments, however, regarding the EOP's capability to perform on-line searches of all e-mail. A description of these recent developments is necessary to understand the particular issue at bar in this opinion.

In February of 2000, the plaintiffs discovered evidence that, contrary to Daniel Bar-

ry's July 9, 1999 affidavit, not all e-mail from November 1992 to July 14, 1994 [3] had been archived in an on-line format, and, as such, certain e-mail would not be searched by performing a global on-line inquiry. The plaintiffs filed a motion on February 19, 2000, to supplement their motion to compel with a declaration by Sheryl Hall, a computer specialist at the White House. In this declaration, Hall attests that, beginning in August 1996, incoming e-mails to nearly 500 people in the EOP, including top-level employees, were not transferred to the computer system in the White House, which is known as the Automated Records Management System ("ARMS"). Third Decl. of Sheryl Hall at 2 (Feb. 19, 2000). As a result, Hall stated, these e-mails, which number approximately 100,000, were not and can not now be word searched on-line. *Id.* Hall stated that most of these e-mails do still exist, however, on back-up tapes, and, therefore, can still be printed and the hard copies searched. *Id.* at 5. Hall also attested in her declaration that several employees who were aware of the e-mail problem were threatened with jail or the loss of their jobs if they told anyone else. *Id.* at 4–5.

In light of this declaration, the plaintiffs requested that the court hold an evidentiary hearing to determine why material evidence was not produced to them. Plaintiffs argued that such a hearing was particularly necessary due to the fact that Daniel Barry had filed a declaration in this court attesting incorrectly that all EOP e-mail would be susceptible to a global on-line word search.

Then, on February 25, 2000, plaintiffs filed a motion for leave to file a second supplement. This supplement included a declaration from another computer specialist at the White House, Betty Lambuth, who corroborated Hall's earlier declaration. On March 7, 2000, the plaintiffs filed a motion for an expedited *ex parte* conference concerning the possible destruction of hard drives in the White House. Plaintiffs attached to this motion the Fourth Declaration of Sheryl Hall.

---

**3.** Barry attested in his declaration that, as of that date, all e-mail, with the exception of e-mail from February and March of 1993 had been archived and, therefore, could be searched on-line. Barry

Decl. at ¶ 5 (July 9, 1999). He further stated that the two remaining months would be completed by mid-August 1999, thereby making all e-mail susceptible to being word-searched. *Id.*

In this declaration, Hall stated that she had received information from a White House Office of Administration. ("OA") employee that the White House was planning to destroy archival cartridge tapes of the computer hard drives of departed White House staff members.

On March 9, 2000, the plaintiffs filed a motion to file a third supplement to their motion to compel and a further request for an evidentiary hearing. Plaintiffs' third supplement consisted of two letters written by Congressman Dan Burton, Chairman of the House Committee on Government Reform, and two newspaper articles concerning the approximately 100,000 e-mails that appear to have been excluded from searches made in response to prior Congressional subpoenas.

A hearing was held on these motions on March 10, 2000. At that hearing, the court ordered that the EOP provide assurances that the material at issue will be preserved and protected until the court has an opportunity to rule on the plaintiffs' motion for an evidentiary hearing and motion to compel as to their request for e-mails and hard drives. The EOP responded by assuring the court that "the e-mail in question, to the extent it exists is being preserved, and is not being, and will not be overwritten." [4] EOP's Resp. to Mem. and Order of March 15, 2000 at 1. The EOP further provided the court with the name of the deputy to the associate director of IS & T, Terry Misich, who had been given the responsibility for preserving the integrity of the back-up tapes that are the subject of the controversy. [5] In response to Hall's Fourth Declaration, the EOP advised the court their current policy is to make back-up tapes of the hard drive files of departed employees, and not to destroy those back-up tapes. The EOP then reiterated their position that the best way to deal with discovery of e-mails is to perform one, global search for the entire case under reasonable parameters as to search terms and persons whose files are to be searched.

At the conclusion of the hearing, the court declined to take custody of the material at issue, stating that it would accept the representations made by the White House that they will not tamper with either the e-mails or the hard drives, but rather they would preserve the integrity of these materials. The court then granted the EOP two weeks to respond to the plaintiffs' motions to file their supplements to their motion to compel.

On March 21, 2000, the EOP filed their opposition to the plaintiffs' motion for leave to file their third supplement. As to the plaintiffs' first and second supplements, the EOP moved on March 23, 2000 to have the court indefinitely stay its consideration of the e-mail issue due to the overlapping investigations of the Department of Justice's Criminal Division and the Office of Independent Counsel. As to the question of hard drives raised in Sheryl Hall's fourth declaration, the EOP moved for an additional week to respond. The court held a hearing on the EOP's motion on March 24, 2000. At that hearing, the court took the EOP's motion to stay under consideration. At the EOP's suggestion, the court further ordered that the Criminal Division of the Department of Justice provide the court with periodic *ex parte, in camera* status reports in chambers on the progress of its investigation, beginning on March 30, 2000.

Also at the March 24, 2000 hearing, the plaintiffs first raised the issue of the possible existence of a "zip" disk containing several e-mails, which was made from the F: drive file of Robert Haas, a White House computer specialist. Counsel for the EOP, James Gilli-

---

4. The hearing on this matter began at 11:30 a.m. The court, then ordered that the hearing be continued at 5:00 p.m. that same day, so that the EOP would have a chance to meet with the appropriate White House officials in order to be able to provide the court with the requested assurances.

5. The EOP later provided this Court, in response to a letter from Congressman Burton requesting that the court take steps to ensure the e-mails are preserved, with a declaration from Charles C. Easley, the EOP Security Officer, which stated that the approximately 3,400 back-up tapes that may contain copies of the e-mail at issue are being preserved. *See* Declaration of Charles C. Easley at 1 (March 16, 2000). The court then issued an order on March 20, 2000, finding that no further action was necessary to preserve the e-mail based on the government's additional assurances.

gan, responded that he had recently become aware that such a "zip" disk did exist. He further represented that he would later provide additional assurance to the court that the disk was being preserved. On March 27, 2000, Mr. Gilligan provided this assurance in the form of a letter to the court stating that the zip disk was being stored in the custody of Charles Easley, EOP Security Officer, under the same conditions of security as the 3,400 e-mail back-up tapes, as described in Mr. Easley's earlier affidavit.

On March 31, 2000, the plaintiffs filed a motion for an order to show cause concerning the "zip" drive and related matters and a request for an evidentiary hearing. The plaintiffs' motion was based on the March 30, 2000, testimony of White House Counsel, Beth Nolan, before the House Government Reform Committee, stating that the EOP had tried to read some of the zip disk material but were unable to do so, and, therefore, they had to go back to Mr. Haas' F: drive to make another zip disk. Plaintiffs argued that the court should hold an evidentiary hearing because the EOP had tampered with the "zip" disk. The plaintiffs further argued that a hearing was required due to the fact that the White House had indicated that it believed that this court's prior order to preserve material applied only to the e-mails and hard drives, and not the "zip" disk. A hearing was held on this motion on March 31, 2000, at which the court took the plaintiffs' motion for an order to show cause under advisement. The court clarified that its prior orders to preserve the material at issue encompassed the "zip" disk as well. The court further stated, however, that its orders were only that the information be preserved, and did not bar the White House from accessing the information.

On April 3, 2000, the EOP filed its response to the plaintiffs' motion for an evidentiary hearing on the preservation of hard drives. The EOP provided the declaration of Michael Lyle, Director of the Office of Administration, who stated that the EOP has no plan to alter or destroy the back-up tapes of the hard-drive files of departed EOP employees, and that he had assigned the task of safeguarding these tapes to Charles Easley, EOP Security Officer. Easley also provided a second declaration attesting that he was preserving the back-up tapes containing the hard-drive files (approximately 600 of them), and describing the manner in which they were being preserved.

On April 6, 2000, plaintiffs filed a fourth supplement to their motion to compel, renewing their request that the court take custody of the subject evidence. In this motion, the plaintiffs argued that such a measure is necessary based on evidence that the contractors hired by the White House to search and preserve the e-mails consists of former White House employees who worked closely with individuals who are the subject of the Department of Justice's criminal investigation.

On April 27, 2000, the court held another hearing regarding this dispute. At that hearing, the court again denied the plaintiffs' request that the court take custody of the e-mail back-up tapes, hard drives and zip disks. The court held the plaintiffs' motion for an evidentiary hearing and the plaintiffs' motion for an order to show cause concerning the zip disk in abeyance so as not to interfere with the Department of Justice's criminal investigation into the matter. Regarding the discovery of relevant e-mails, the court ordered the plaintiffs to file a supplemental memorandum regarding the parameters for the search of those e-mails that have been successfully transferred to the ARMS. The court further ordered that the EOP file a response to the plaintiffs' supplemental briefing. In addition, the court ordered the plaintiffs to file a separate supplemental memorandum concerning the search of non-ARMS e-mail, hard drives and other material, to which the EOP should then file its response. Then, on May 17, 2000, the court issued an order regarding the plaintiffs' second request for the production of documents, deferring on those requests concerning hard drives and e-mails.

In summary, there are three basic issues raised by the parties in the motions and hearings described above. The initial issue is the actual search for relevant material as part of discovery in the pending case. This search can be broken down into two further components: the search of all e-mails now archived on ARMS and capable of being

word-searched, and the search of the approximately 100,000 e-mails not archived on ARMS but possibly contained within the 3,400 back-up tapes. The second issue is the preservation of the material, including the back-up tapes, the hard drives of departing employees and the Haas "zip" disk, until such time that they can be searched.[6] The third issue, which is primarily the focus of the DOJ criminal investigation, is the allegations that the White House "covered-up" the missing e-mails once they were discovered, by threatening employees and withholding information from this court and Congress.

As discussed above, the court has temporarily held the third issue in abeyance so as not to interfere with the DOJ investigation. As to the second issue, the court is satisfied at this time that the material is being preserved. Therefore, the court now turns only to the initial issue, raised in the plaintiff's original motion to compel—the search for relevant, discoverable material. In this order, the court will address only the search of that e-mail which is now archived on ARMS and capable of being word-searched. The remaining issues, including when and how an identical search can be performed on the approximately 100,000 e-mails available only on back-up tapes and what search should be performed regarding the hard drives, will be addressed in a later order.

Thus turning to the issue at bar, the plaintiffs filed their supplemental memorandum regarding the search of ARMS e-mails on May 2, 2000. In their brief, the plaintiffs requested that the search be conducted using 36 search terms and for 47 individuals. The plaintiffs also requested that the court order a general search of all e-mail for Craig Livingstone, Anthony Marceca, Bernard Nussbaum, Hillary Rodham Clinton, and William Kennedy for any documents responsive to the plaintiffs' prior document requests. On May 8, 2000, they filed their brief as to the parameters for the search of non-ARMS e-

mails, in which they sought to add another individual and search term to their ARMS search request. Then, on May 11, 2000, the plaintiffs filed a motion for leave to supplement their May 2nd brief in order to add another 9 individuals who had been recently named by the EOP in a supplement to their responses to the plaintiffs' third set of interrogatories.

The EOP filed their response to the plaintiffs' May 2nd brief on May 12, 2000. They further sought leave to file an *in camera, ex parte* supplement to their response on May 17, 2000. The plaintiffs then filed a reply to the EOP's response on May 19, 2000.[7] The EOP then, on May 26, 2000, moved to strike the plaintiffs' reply, or, in the alternative, to file a surreply. In a separate order, the court granted the EOP leave to file their surreply, which the court has considered in its ruling today.

## II. *Analysis*

As discussed above, plaintiffs first requested in their motion to compel that an "initial" search for relevant e-mail be conducted of approximately 40 individuals utilizing 36 search terms. The EOP objected to this request as overbroad and overly burdensome.[8] The plaintiffs then, in their reply, narrowed their "initial" request to only eleven individuals and thirteen search terms. In the plaintiffs' supplemental briefing regarding the parameters for a global search for all relevant e-mails, the plaintiffs again expand the number of persons whose e-mail should be searched to 47 individuals and the number of search terms to 37. They then supplement this request with an additional nine individuals.

The EOP objects to the plaintiffs' requested parameters as overbroad and unduly burdensome. To support its argument, the EOP provides a declaration by Leanna Terrell, Associate Director of IS & T in the Office of Administration. In her declaration, Ms. Ter-

---

6. The EOP has asked for a stay of the court's consideration of this matter only as to the e-mails, which would entail only the back-up tapes and Haas "zip" disk, but not the hard drives.

7. In their reply, the plaintiffs attempt to add yet another four individuals to their request.

8. In support of their argument, the EOP provided the declaration of Daniel Barry, whose veracity has since been called into question. In that declaration, Mr. Barry attests that such a search would cost approximately $687,180. *See* Decl. of Daniel Barry at ¶ 12 (July 9, 1999).

rell estimates that performing the search according to the parameters proposed by plaintiffs in their supplemental briefing (not including the fourteen individuals the plaintiffs seek to add to their request) would take over ten weeks to complete and would cost approximately $1,051,482.[9] *See* Amended Terrell Decl. at ¶ 11 (May 23, 2000).

Rule 34 of the Federal Rules of Civil Procedure, which governs the production of documents, states that any party may serve on any other party a request for documents or "any tangible things which constitute or contain matters within the scope of Rule 26(b) . . . ." FED. R. CIV. P. 34(a). Rule 26(b) states that "[p]arties may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action." FED. R. CIV. P. 26(b)(1). Pursuant to Rule 26(b)(2), the court may limit this discovery, either on its own initiative or pursuant to a motion for a protective order, if it determines that

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in this action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

FED. R. CIV. P. 26(b)(2).

The court notes that the EOP cannot be objecting to the plaintiffs' request for e-mails in general as unreasonably cumulative or duplicative, given the fact that there has not yet been any search for e-mails throughout the course of discovery in this action. Instead, the EOP has repeatedly responded to the plaintiffs' requests by stating that it would perform only one, global search for relevant e-mails in order to avoid any cumulative discovery. Given these repeated assurances, there is also no issue regarding whether the plaintiffs have had ample opportunity by discovery in this action to obtain the information sought. A global search of the e-mails, by the EOP's own admission, could not be performed until the e-mails had been transferred to the ARMS system, a process that was not completed until shortly after August of 1999, when the plaintiffs filed their motion to compel. Therefore, the EOP's objections to the plaintiffs' request for e-mails must be based on either relevance or undue burden.

█ Because Rule 26 only allows discovery of material "relevant to the subject matter involved in the pending action", once a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is discoverable. FED. R. CIV. P. 26(b)(1); *see also Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C.1999)(stating that the party seeking to compel information must first demonstrate its relevance); *Alexander v. FBI*, 186 F.R.D. 21, 45 (D.D.C.1998) (same); *Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 631 (M.D.Pa.1997)("Once a relevancy objection has been raised, the party seeking discovery must demonstrate that the request is within the scope of discovery.") For the purposes of discovery, relevancy is broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case. *See Alexander v. FBI*, 186 F.R.D. 12, 18 (D.D.C.1998); *In re Aircrash Disaster Near Roselawn, Ind.*, 172 F.R.D. 295, 303 (N.D.Ill.1997); *see also* 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2008 (2d ed.1994) (Stating that relevance is to be construed liberally and that "it is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.")

█ Once the relevance of the material sought has been established, the party ob-

---

9. As Ms. Terrell explains in her declaration, however, this cost does not represent "hard cost" to the EOP, but rather it is an estimate of the search cost if it were to be performed on a reimbursable basis. *See* Amended Terrell Decl. at ¶ 11.

jecting to that discovery then bears the burden of "show[ing] why discovery should not be permitted." *Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 56 (E.D.Pa.1994) (citing *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 118 (N.D.Ind.1991)); *see also Ellsworth Assocs., Inc. v. United States*, 917 F.Supp. 841, 844 (D.D.C.1996) ("A party opposing discovery bears the burden of showing why discovery should be denied.") In order to sustain an objection based on undue burden, the objecting party must make a specific, detailed showing of how the discovery request is burdensome. *See Lohrenz v. Donnelly*, 187 F.R.D. 1, 4 (D.D.C.1999) (compelling the objecting party to fully answer the interrogatory at issue because there was no showing that the research required was unduly burdensome); *Chubb Integrated Systems Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 60–61 (D.D.C.1984)("An objection must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.") With this in mind, the court now turns to the parties' proposals regarding the search of ARMS e-mails.

### A. *Plaintiffs' July 1999 Proposal*

The EOP argues that the starting point for the court's analysis should be the parameters proposed by the plaintiffs in their reply to their motion to compel ("July 1999 proposal"). This proposal is as follows:

> Individuals: Bernard Nussbaum, Craig Livingstone, Anthony Marceca, Hillary Rodham Clinton, Vincent Foster, Bill Kennedy, Marsha Scott, Betsy Pond, Deborah Gorham, Linda Tripp, and Mari Anderson. Search Terms: background report, summary report, FBI, OPS, Dale, travel office, Craig or Livingstone, Anthony or Marceca, update project, Bill or William and Kennedy, Nussbaum, HRC or Hillary.

Pls.' Reply to Opp'n to Pls.' Mot. To Compel Docs. at 19. They further argue, however, that the court should narrow even this pro-

posal in order to shorten the time needed to complete the project.

In support of its argument, the EOP provides the court with Ms. Terrell's declaration, in which she attests that the plaintiffs' July 1999 proposal, without any adjustments, would cost approximately $298,250 and would take an estimated sixteen hours to set up and 500 hours to run and print, producing about ten boxes of e-mails.[10] Amended Terrell Decl. at ¶ 14. The EOP argues that applying certain limitations to the search would shorten the period of time before the e-mails would be produced while still capturing all relevant e-mails. The court will now address each of these limitations recommended by the EOP.

### 1. Marsha Scott

■ The EOP argues that Marsha Scott is irrelevant to the pending action, and, therefore, her e-mail should not be searched. The court, however, has already addressed the issue of the relevancy of matters regarding Ms. Scott and found such matters to be relevant and discoverable. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 11 (May 17, 2000)("[I]nformation regarding Marsha Scott's computer is relevant to the pending action as it may bear on the possible misuse of the plaintiffs' files.") Furthermore, the EOP argues that the evidence on which the plaintiffs rely to establish Ms. Scott's relevance—the deposition testimony of Linda Tripp—is insufficient. However, "[d]iscovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient." 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2008 (2d ed.1994). Accordingly, the court rejects the EOP's argument, and Marsha Scott shall be included in the list of individuals whose e-mail should be searched. However, as discussed below, given that the plaintiffs have established the relevance of Ms. Scott only as she relates to the possible misuse of FBI files, her e-mail shall be searched only for those search terms relating to that issue.

---

**10.** The court notes that it rejects any argument by the EOP that a search in accordance with the plaintiffs' July 1999 proposal is prohibitively expensive or time-consuming in light of the fact that the alternative search proposed by the EOP would cost roughly the same amount and would take the same time to complete. *See* Amended Terrell Decl. at ¶ 18.

### 2. The "travel office"

■ The term "travel office" is included in the plaintiffs' July 1999 proposal as one of the search terms. As the EOP correctly notes, however, this court has previously ruled on many occasions that matters regarding the travel office, with the exception of the possible misuse of the government file of Billy Dale, a former Travel Office employee, are not relevant to the instant case. *See Alexander v. FBI*, 186 F.R.D. 123, 125–26 (D.D.C.1998) (re: Linda Tripp); *Alexander v. FBI*, 192 F.R.D. 42, 44 (D.D.C.2000) (Re: Thomas McLarty); *Alexander v. FBI*, 194 F.R.D. 305 (D.D.C.2000). Therefore, plaintiffs are entitled to "travel office" e-mails only as they may relate to the misuse of Billy Dale's file. Given that "Dale" is a requested search term, to which the EOP has no objection, there is no basis for including "travel office" as a search term as well. Therefore, "travel office" shall be excluded from the list of search terms.

### 3. Searches beyond the White House Office

■ As explained in the Terrell Declaration, the ARMS database is divided into nineteen discrete segments known as "buckets." These buckets represent agencies or EOP components, such as the White House Office ("WHO"), the Office of Management and Budget, and the Council on Environmental Quality. *See* Amended Terrell Decl. at ¶ 5 (listing the nineteen buckets). Each bucket contains e-mails of users employed by the corresponding EOP component, including all e-mails sent to or received from individuals outside that component (including persons completely outside of the White House). Amended Terrell Decl. at ¶ 5.

The EOP argues that, given the fact that all of the persons named in the plaintiffs' July 1999 proposal were e-mail account-holders whose e-mails were stored in the "WHO" bucket [11], only this bucket needs to be searched. Plaintiffs have no objection to limiting the search to certain buckets on the ARMS system. *See* Pls.' Reply to the EOP's Resp. to Pls.' Supplement at 5. The plaintiffs, however, argue that, along with the "WHO" bucket, the President of the United States ("POTUS"), the Office of the Vice–President ("VPO"), the National Security Council ("NSC") and the DEFAULT buckets should be searched as well.

According to Terrell's declaration, however, the POTUS bucket contains only blank schedules, and does not contain any e-mail. *See* Terrell Decl. at ¶ 5. Thus, a search of this bucket would not produce any relevant e-mails, and need not be performed.

·The DEFAULT bucket, according to Ms. Terrell, contains only unidentifiable external e-mail. *See id.* The plaintiffs do not explain why such e-mail would be relevant to the pending action. Accordingly, they have not met their burden of establishing the relevance of the discovery sought, and the DEFAULT bucket need not be searched.

As to the VPO and NSC buckets, the plaintiffs argue that these buckets should be searched based on their expanded request, which includes Vice–President Al Gore, and NSC employees Robert Manzanares, Marcia Dimel, and Deborah Perroy. Thus, these buckets will be addressed later in this opinion in conjunction with the court's analysis of the plaintiffs' most recent proposal as to search parameters. The court, agrees however, that with these two possible exceptions, all buckets other than the White House Office should be excluded from the search.

### 4. Designating the names of EOP e-mail users as search terms

■ Plaintiffs identify several EOP e-mail users both as persons whose e-mails are to be searched, and as names to be used as search terms. These include Craig Livingstone, Bernard Nussbaum, and William Kennedy. The EOP states that, because of the manner in which ARMS goes about searching for e-mails, using the name of the person

---

11. According to EOP records, however, one of the individuals listed in the July 1999 proposal, Anthony Marceca, never had any e-mail account at all during his White House tenure. As such, there is still no need to search other buckets outside the White House Office for e-mails that were sent to or received from him. The court further notes that the term "Marceca" is included in the list of search terms. *See* Amended Terrell Decl. at ¶ 19.

with an e-mail account as one of the terms to be searched for within that individual's e-mails will retrieve all of that person's e-mails, without regard to subject matter or the terms in the search. *See* Terrell Decl. at ¶ 12.[12] Thus, such a request would only serve to generate a significant output of e-mails that are irrelevant to this case.

The court agrees that the e-mails of these individuals are only relevant as they relate to certain subjects, such as the improper acquisition and misuse of the FBI files of former White House employees, which are covered by such search terms as "background report," "FBI files" or "Dale." E-mails concerning other, unrelated matters as to these individuals, however, which this request seems designed to obtain, are not relevant.

The plaintiffs, in their reply, do not even address the EOP's argument regarding the use of these individuals as search terms. Accordingly, they do not establish in any way how this request is "reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). Therefore, while the court finds that these individuals are properly included in the list of those persons whose e-mail should be searched, their inclusion as search terms is not likely to lead to the discovery of evidence, other than that already discovered by using other, more appropriate terms. Thus, the terms Craig Livingstone, Bill Kennedy and Nussbaum are excluded from the list of search terms.

### 5. "HRC," "Hillary," and "FBI"

█ The EOP also argues that the terms "HRC," "Hillary," and "FBI" are overbroad and not reasonably calculated to lead to the discovery of admissible evidence. The EOP states that, in effect, the plaintiffs are asking the EOP to conduct a search for all e-mails that make any reference to the First Lady or the FBI, without regard to context. The EOP argues that such a request would clearly yield a large number of irrelevant e-mails concerning such topics as White House social events, the First Lady's public appearances, Ruby Ridge and Louis Freeh's confirmation. The EOP proposes that the search be performed using more specific terms such as "FBI files" rather than just "FBI."

The plaintiffs reply that, as Mrs. Clinton and the FBI are defendants in this case, it "goes without saying" that the search terms referring to them are appropriate. However, as above, the plaintiffs fail to explain how e-mails discussing Mrs. Clinton and the FBI would be relevant, outside of the subject areas already captured by the use of other, more appropriate terms such as "OPS," "background report," "summary report," and "FBI files." Thus, the terms "HRC" and "Hillary" shall be excluded from the search terms used, and the term "FBI files," rather than simply "FBI" shall be used as a search term for the ARMS search.

### 6. "And/or" searches—first or last names alone

The EOP argues that the plaintiffs' inclusion of a number of "and/or" searches such as "Tony and/or Marceca" is overbroad. The EOP argues that a search for all e-mails mentioning common names like "Tony" or "Kennedy" will retrieve a large number of e-mail messages, many of which do not even refer to the particular individuals at issue. Rather, the EOP proposes to perform the search for only the first and last names together. Similarly, the EOP argues that the plaintiffs' proposed search term "Dale," is also overbroad, and should be changed to "Billy Dale" or "Billy Ray Dale."

In light of the court's ruling above that the names of e-mail account-holders listed as individuals whose e-mail should be searched should not also be included as search terms, the only remaining "and/or search" in the July 1999 proposal is "Anthony or Marceca." The court agrees that the term "Anthony," a common first name, is likely to generate a large number of irrelevant e-mails. The last name Marceca, however, is much more narrowly tailored and is reasonably calculated to lead to the discovery of admissible evidence. Similarly the court finds that the term "Dale", without reference to "Billy" is not overbroad and is likely to lead to discover-

---

**12.** Anthony Marceca is also listed as both an individual whose e-mail should be searched and a search term. However, as there is no record that Marceca has an e-mail account, then it would not be repetitive or overly burdensome to use his name as a search term.

able evidence, which may not be discovered by incorporating the term "Billy." Accordingly, the search shall be performed using the terms "Dale" and "Marceca."

### 7. Exclusion of public documents

■ The EOP points out that, on a daily basis, EOP employees receive untold numbers of e-mail messages attaching a variety of public documents, such as press briefings, talk-show transcripts, and media reports, which are publicly available and largely irrelevant. Amended Terrell Decl. at ¶ 12(d). Ms. Terrell states in her declaration that IS & T has experienced in the past a substantial increase in the output of ARMS searches that do not use "exclusions" to prevent the capture of those e-mails attaching public documents. *Id.* Thus, the EOP argues that they should be allowed to use a number of these "exclusions" that it has developed for past ARMS searches.

Such exclusions, however, not only exclude any attached public documents from the search, but also exclude the text of the e-mail to which the documents are attached. In their reply, the plaintiffs argue that, while they do not wish to obtain public news articles or Monica Lewinsky jokes sent to hundreds of people within the White House, they are entitled to any relevant commentary within the e-mails themselves.

The court agrees with this argument. Because using the public documents exclusions would also exclude the text of those e-mails attaching any documents, the court rejects the EOP's request that these exclusions be used in the search. The court does note, however, that to the extent that the search results in the production of any public documents, these documents can be discarded

and only the attaching e-mails need be reviewed for relevance.

### 8. Citizen "bulk" e-mail

The EOP also states that within the WHO bucket is so-called "bulk" e-mail for the receipt of e-mails sent to the President and First Lady, via the Internet, by members of the general public. *See* Amended Terrell Decl. at ¶ 12(e). This bulk e-mail is not used by the President or the First Lady themselves, but rather it is routed directly to the White House Office of Correspondence, where it is reviewed and handled by staff in the same fashion as ordinary citizen mail. *Id.* This mail is quite voluminous (the President receives approximately 3,000–5,000 e-mails per day, and the First Lady about 200–500 per day), and is likely to have no bearing on establishing the facts of the case. *Id.* The EOP proposes, therefore, that these e-mails be excluded from the search. As the plaintiffs agree with this proposal in their reply, the court need not address the issue further. Bulk e-mails shall be excluded from the ARMS e-mail search.

### B. *The Plaintiffs' Latest, Expanded Search Proposal*

In their revised request, the plaintiffs increase the number of individuals whose e-mail should be searched to a total of 57 individuals.[13] They also increase the number of search terms to 37[14]. The EOP argues that the court should not consider the plaintiffs' expanded request because nothing has changed in the underlying facts of the case since the July 1999 proposal to justify the additional parameters.

---

**13.** Plaintiffs included 47 individuals in their supplemental briefing. They then added 1 more person in their motion regarding the non-ARMS search and 9 more individuals in their motion to amend their supplemental briefing. In addition, the plaintiffs state in their reply to the EOP's supplemental briefing that they are adding four more individuals, which they had "inadvertently omitted," to their request. Pls' Reply to EOP's Response to Pls. Supp. at 4, n. 4 & 13, n. 10. The plaintiffs do not seek leave to add these four individuals—Robert Manzanares, Marsha Dimel, Deborah Perroy, and Lloyd Cutler—to their request, however; nor do they explain why the late addition is justified. Therefore, the court will

not consider the plaintiffs' request as to these four individuals. Given that the reason the plaintiffs wanted to search the National Security Council bucket was the addition of three of these persons, who were NSC employees, the plaintiffs' request to search the NSC bucket is also denied.

**14.** In their supplemental briefing, plaintiffs originally proposed 36 search terms. In a footnote to their brief regarding the search of non-ARMS e-mail, however, plaintiffs seek leave to add another search term, "privacy," to their request for the ARMS e-mail search.

As the EOP itself pointed out at the April 27, 2000 hearing on this matter, however, the plaintiffs' request was only for an "initial" search. Tr. of April 27, 2000 hearing at 18–19.; Pls.' Reply to EOP's Opp. to Pls' Mot. to Compel at 19. At that hearing, in response to the EOP's suggestion that the best way to proceed with the discovery of e-mail was to perform only one, global search, the court ordered the parties to submit supplemental briefing as to their proposed parameters for such a final search, as opposed to an initial, piecemeal search. Accordingly, having been authorized by this court to submit a revised search, the plaintiffs need not justify the reasons behind their revisions. The court also notes, however, that in accordance with the normal rules of discovery, plaintiffs do need to establish the relevance of their requests.

Alternatively, the EOP argues that the expanded request, if it is to be considered by the court, must be limited because, as written by the plaintiffs, the burden or expense of the proposal outweighs its likely benefit. *See* FED. R. CIV. P. 26(b)(2). To support its argument, the EOP relies on the declaration of Ms. Terrell, in which she estimates that the cost of the plaintiffs' expanded proposal (not including the fourteen individuals and one search term the plaintiffs sought to add after their initial supplement) would cost approximately $1,051,482 and would take in excess of ten weeks to complete. Amended Terrell Decl. at ¶ 11. The EOP argues that in light of this estimate, the plaintiffs' request as to those individuals who have no personal involvement or first-hand knowledge of any matters relevant to the action should be denied as the burden of conducting such a search outweighs the likely benefit. The EOP further argues that several of the additional search terms proposed by the plaintiffs are similarly overly broad and should therefore be denied. With this in mind, the court will now address each of the additional individuals and search terms proposed by the plaintiffs.

### 1. Additional Individuals

#### a. Maggie Williams, Capricia Marshall, Marsha Berry and Lisa Caputo

 Each of these individuals was at one time, or remains, employed within the Office of the First Lady. Ms. Williams was formerly the First Lady's Chief of Staff. Ms. Marshall is the White House Social Secretary. Both Ms. Berry and Ms. Caputo were at one time the First Lady's Director of Communications.

The EOP argues that these individuals should not be added as there is no factual basis for the plaintiffs' claim that Mrs. Clinton was involved in "Filegate." However, as noted above, "[d]iscovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient." 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2008 (2d ed.1994).

The EOP further argues, however, that there is no reason to believe that these particular individuals were related in any way to the pending case. The plaintiffs respond only with a statement that "the evidence shows that Mrs. Clinton acted through her staff." They fail to establish, however, just how the evidence shows this fact or how these particular individuals, with the exception of Ms. Williams, are related to this case. Therefore, the court finds that the plaintiffs have failed to meet their burden of establishing the relevance of Ms. Marshall, Ms. Berry and Ms. Caputo, and their e-mails need not be searched.

 Regarding Ms. Williams, the plaintiffs point to the fact that Craig Livingstone, a key figure in the case at hand, testified at his deposition that he consulted with Ms. Williams in his effort to obtain his job at the White House. See Tr. of Livingstone Depo. at 391–392. Thus, the court finds that the plaintiffs have met their burden of establishing that their request as to Ms. Williams is reasonably calculated to lead to the discovery of admissible evidence. Ms. Williams shall be included in the list of those persons whose e-mail should be searched. However, as discussed below, her e-mail shall be searched only for those terms relating to OPS, where Livingstone was employed, and the acquisition and misuse of files.

#### b. Vice President Albert Gore

 The EOP points out that, in the preceding three and one-half years of this

litigation, the plaintiffs have never alleged any involvement by the Vice President in this matter. Plaintiffs argue that they are entitled to search the Vice President's e-mail based on a "smoking gun" document, which they claim implicates the Vice President in this case. This document is a June 19, 1993 Memorandum from William Kennedy to Joanne Hilty in the Office of the Vice President. Mr. Kennedy states in the memorandum that the FBI had informed him that Ms. Hilty had requested copies of background summaries "prepared for this Administration." Mem. to Joanne Hilty of June 19, 1993 at 1 (attached as Ex.5 to Pls.' Reply to EOP's Resp. to Pls.' Supplement to Mot. to Compel).

As the EOP points out, however, this memorandum, which was first produced to the plaintiffs almost two and one-half years ago, does not demonstrate that these background summaries were concerning former Bush and Reagan Administration officials, as opposed to just then-current White House employees.[15] This court has already ruled that the obtaining of files of then-current employees is not relevant to the pending action. *See Alexander v. FBI*, 192 F.R.D. 50, 56 (D.D.C.2000). Thus, as the plaintiffs have not met their burden of establishing the relevance of their request for the Vice President's e-mail, their request is denied. Furthermore, given the fact that this request is denied, there is no need to search the Office of the Vice President bucket when performing the ARMS e-mail search.

### c. George Stephanopoulos and Harold Ickes

■ The EOP objects to these requests as irrelevant and overbroad. Harold Ickes was Deputy Chief of Staff and Assistant to the President from January 1994 to January 1997. George Stephanopoulos is the former Director of Communications for the White House and former Senior Advisor to the President for Policy and Strategy. Stephanopoulos held the latter position during the period of time that serves as the basis of plaintiffs' complaint. Both of these individuals were deposed on more than one occasion

in this litigation and each expressed personal knowledge relevant to the plaintiffs' case. Thus, the court finds that the plaintiffs' request as to Mr. Stephanopoulos and Mr. Ickes is reasonably calculated to lead to the discovery of admissible evidence, and their e-mails shall be searched.

### d. Jack Quinn and Abner Mikva

■ Both of these individuals are former Counsels to the President. The EOP argues that there is no evidence, or even an allegation, that either of these individuals ever had any involvement in the acquisition of the FBI files of former Reagan and Bush Administration employees, an event that pre-dated their tenures at the White House. Nor is there any evidence that these individuals were involved in any misuse of these files. Therefore, the EOP argues, the burden of searching the e-mails of these individuals with no direct knowledge would outweigh any likely benefit.

The plaintiffs argue that Jack Quinn was the White House Counsel at the time the Filegate scandal broke and participated in the White House investigation of the underlying facts. Plaintiffs further point to Harold Ickes' deposition testimony that he had discussed Filegate with Jack Quinn. Ickes Depo. at 282–84. The court finds that these facts, however, fail to demonstrate that a search of Quinn's e-mail would produce any additional relevant e-mail, particularly in light of the fact that Harold Ickes' e-mail is being searched so any e-mails between Mr. Quinn and Mr. Ickes will already be captured. Thus, the plaintiffs' request to search Mr. Quinn's e-mail is denied.

■ Regarding Abner Mikva, the plaintiffs offer only that he was at one time "another nominal supervisor of Defendant Livingstone" and that he was in a "position" to have accessed the plaintiffs' FBI files. Pls' Reply to EOP's Resp. to the Pls.' Supplement at 12–13. As the EOP points out, however, there has never been any allegation nor any evidence that Mr. Mikva ever actually accessed the files. Accordingly, the court

---

**15.** In fact, the phrase "prepared for this Administration" seems to indicate that this memorandum is referring only to those individuals employed by the Clinton Administration.

finds that, given the marginal relevance Abner Mikva has to this case, the burden of searching his e-mail outweighs any small benefit that may result. Thus, the plaintiffs' request as to Abner Mikva is also denied.

### e. Evelyn Lieberman

■ The EOP also argues that there is no evidence or allegation that Evelyn Lieberman, former White House Deputy Chief of Staff for Operations, was in any way involved with, or had any personal knowledge of the events underlying the pending action. The EOP states that Ms. Lieberman is best known as the White House official who arranged to have Monica Lewinsky transferred from the White House to the Pentagon. It further notes (correctly) that this court has ruled that the Lewinsky matter is not relevant to this case. As such, the EOP argues, Ms. Lieberman's e-mail is also irrelevant and should not be included in the search.

The plaintiffs respond by stating that they have repeatedly established the relevance of Ms. Lieberman in this litigation. They further reject the EOP's implication that they are seeking information regarding Monica Lewinsky. They fail to indicate, however, what information they are seeking, or how their request is reasonably calculated to lead to the discovery of admissible evidence. Rather, they simply assert that Ms. Lieberman was the "eyes and ears" of Hillary Clinton, and that she was "in practice" a supervisor of Craig Livingstone. The court thus finds that the plaintiffs have failed to meet their burden of establishing the relevance of the information sought in their request. Evelyn Lieberman shall be excluded from the list of individuals whose e-mail should be searched.

### f. Thomas McLarty

■ The EOP objects to the inclusion of Mr. McLarty in the plaintiffs' proposed parameters. They argue that, as he was not involved in either the FBI files matter or the White House investigation of the matter, any benefit of a search of his e-mail is outweighed by the burden.

The court agrees with the EOP's argument. In their reply, the plaintiffs rely on this court's order of March 6, 2000 requiring McLarty to produce some documents previously withheld due to privilege to support their request. *See Alexander v. FBI*, 192 F.R.D. 42, 46 (D.D.C.2000). As the EOP correctly notes, however, these documents consisted almost entirely of annotated media clippings and did not demonstrate that Mr. McLarty had any involvement or first-hand knowledge of relevant matters. Thus, the court rejects the plaintiffs' request as to Mr. McLarty's e-mail.

### g. Joel Klein

■ The EOP also objects to the plaintiffs' request that Joel Klein's e-mail be searched. The EOP argues that Mr. Klein is unrelated to the current litigation.

To establish the relevance of Mr. Klein, the plaintiffs rely on Linda Tripp's testimony that Mr. Klein kept "information on people who were perceived to be enemies of the White House." Tripp Depo. at 375–77. Even assuming this testimony is true, however, there is no evidence that this information was received improperly from government files, and could thus be used as circumstantial evidence of the file misuse alleged in the pending case.[16] The only other reasons plaintiffs give that this request is relevant is that Mr. Klein knew Livingstone enough to support his efforts to get a raise, and that Mr. Klein was in a position to access the plaintiffs' FBI files. The court finds that this is insufficient to establish the relevance of the request. Therefore, Joel Klein shall be excluded from the list of those whose e-mails shall be searched.

### h. Rahm Emanuel and Ann Lewis

The EOP objects to the plaintiffs' request as to these two individuals as irrelevant and overbroad, because they have stated that they have little or no knowledge of any of the matters relevant to this case. The plaintiffs' reply, citing Mr. Emanuel's and Ms. Lewis's responses to plaintiffs' first set of interroga-

---

**16.** In fact, when questioned further on her statement regarding Mr. Klein, Ms. Tripp cited only Mr. Nussbaum and the Office of Independent Counsel as subjects of Mr. Klein's alleged information gathering. Tripp Depo. at 487–490.

tories, that both of these individuals have admitted to having participated in discussions about the release of the Willey letters. These discussions, however, were only general discussions with other members of the senior staff and were unrelated to the decision of the Counsel's Office to release the letters. *See* EOP's Resps. to Pls.' First Set of Interrogs. at 21–24 (statement of Mr. Emanuel that he generally recalls expressing his view to other senior staff that the letters should be released and that he subsequently learned of the decision of the Counsel's Office to release them, and of Ms. Lewis that she had no knowledge of the letters until after their release).

As these individuals have no knowledge pertaining to the decision to release the Willey letters, the court finds that any benefit resulting from a search of their e-mails would be marginal at best, and, therefore, the burden of conducting such a search would outweigh its benefit. Accordingly, the plaintiffs' request to search Ms. Lewis' and Mr. Emanuel's e-mail is denied.

### i. Sidney Blumenthal

The EOP objects to a search of Mr. Blumenthal's e-mail because they state that there is no evidence or allegation that he had any involvement with, or any first-hand knowledge concerning, the acquisition of FBI files or the release of information about Linda Tripp. The EOP admits, however, that Mr. Blumenthal did have a conversation with Mrs. Clinton, a defendant in this case, regarding the release of the Willey letters. *Id.* at 56. He further stated that, on the day the letters were released, he called a reporter at *The New York Times* and left a message stating that Ms. Willey had written letters to the President that were inconsistent with her statements on "60 Minutes.[17]" *Id.*

In light of this testimony, the court finds that the plaintiffs' request as to Mr. Blumenthal's e-mail is reasonably calculated to lead to the discovery of admissible evidence. Thus, his name shall be added to the list of those individuals whose e-mail will be

searched. However, as the plaintiffs have established only Mr. Blumenthal's relevance only as to the Kathleen Willey letters, the search of his e-mail may be limited accordingly, as discussed below.

### j. James Carville

The EOP objects to a search of James Carville's e-mail on the grounds that there is no evidence that he was involved with any of the relevant matters, with the exception of the fact that he was consulted by the President concerning the release of the Willey letters. Notwithstanding this fact, however, Ms. Terrell states in her declaration that James Carville never had an e-mail account within the EOP. Thus, as the plaintiffs' request would not lead to the discovery of any evidence, it is denied.

### k. Beth Nolan and John Podesta

The EOP objects to these individuals as irrelevant, arguing that the only possible basis for their inclusion is the recent developments regarding e-mail that was not transferred to the ARMS system. As the EOP correctly notes, these developments are not proper subject matters for discovery at this time, given the current DOJ criminal investigation into the matter.

Plaintiffs argue that besides being implicated in these recent developments, these individuals are relevant basically because they were key officials in the White House and were in a position to access the plaintiffs' files. As discussed above, this is not a sufficient basis for including an individual on the list of persons whose e-mail shall be searched. Thus, the plaintiffs' request as to Beth Nolan and John Podesta is denied.

### l. Leon Panetta

As the EOP points out, Leon Panetta was not included in the search parameters proposed by the plaintiffs in their supplemental briefing on the search of ARMS e-mails. Rather, the plaintiffs seek leave, in a footnote in their memorandum regarding the search of non-ARMS e-mail, to modify their

---

17. Mr. Blumenthal further states that the reporter later told him that she did not receive his message until after the White House release of the letters. Regardless of this fact, however, Mr.

Blumenthal's attempted release could also be used as circumstantial evidence of misuse of the plaintiffs' files in this case.

prior request as to the ARMS e-mail to include Leon Panetta and the search term "privacy."

The court notes that it does not condone the several, piecemeal additions plaintiffs attempt to make to their proposed parameters. If plaintiffs wished to add these terms to the list of parameters, the proper course would have been to file a motion for leave to amend their prior request, as they did with nine other individuals they wished to include in their request. *See* Pls.' Mot. to Amend their Supplements Dated May 2 and May 5.

Irrespective of this fact, however, the court finds that the plaintiffs have failed to meet their burden of establishing the relevance of Mr. Panetta. As the EOP points out, Mr. Panetta's tenure as Chief of Staff did not begin until June 1994, many months after the plaintiffs' FBI files were improperly obtained. Furthermore, he left the White House prior to the Department of Defense's disclosure of information about Linda Tripp and the White House's release of the Kathleen Willey letters. In response, plaintiffs state that Mr. Panetta had "enough information to apologize to the [p]laintiffs that their FBI files were 'reviewed by an Army security officer.'" Pls.' Reply to the EOP's Resp. to the Pls.' Supplement at 17. The court finds that this is insufficient to establish that the plaintiffs' request is reasonably calculated to lead to the discovery of admissible evidence.

The plaintiffs also state that Mr. Panetta, as Chief of Staff when "Filegate" became public, participated in White House meetings about the scandal. The court notes, however, any e-mails Mr. Panetta sent to or received from the other individuals whose e-mail is to be searched will be captured. As the plaintiffs have not established how Mr. Panetta has any particularized or independent involvement in the Filegate matter, the court finds that including his name in the search would be unreasonably duplicative. Thus, their request as to Mr. Panetta is denied.

m. Lisa Wetzl, Jonathan Denbo, Edward Hughes, Jane Dannenhauer, Nancy Gemmell, Jane Sherburne, Terry Good, Christine Varney, John Libonati, Jeff Undercoffer, Arnie Cole, Cheryl Mills, Bruce Lindsey, Charles Ruff, Stephen Waudby, Michael McCurry, Joseph Lockhart, and President Clinton

The plaintiffs do not address the relevance of these individuals in either their supplemental brief or their reply. The EOP, however, does not object to a search of these individuals.[18] They argue, though, that this search should be limited to only certain terms for which these persons are deemed to have relevant knowledge. As the plaintiffs fail to establish any other relevance of these individuals outside of what the EOP advances, the court accepts the EOP's argument. Thus, the e-mail of the following individuals, whom the EOP states "have, or are at least are alleged to have, some information relevant to the FBI files matter" shall be searched only as to those search terms referring to this matter [19]: Lisa Wetzl, Jonathan Denbo, Edward Hughes, Jane Dannenhauer, Nancy Gemmell, Jane Sherburne, Stephen Waudby, Christine Varney, John Libonati, Jeff Undercoffer, and Arnie Cole. EOP Resp. to Pls.' Supplement at 37.[20]

---

18. The EOP does object to the court even considering the plaintiffs' latest proposal, arguing that only the July 1999 proposal should be considered. In the event that the court were to consider the expanded proposal, however, as it has, the EOP provides an alternative argument regarding this proposal, in which it does not object to these terms.

19. The court will address which search items pertain to the FBI files matter, as well as other relevant subject matters, later in this opinion.

20. The EOP also argues that the search of some of the individuals listed in the July 1999 proposal should similarly be limited to certain, relevant search terms. With the exception of Marsha Scott, however, the EOP makes no objection to the relevance of these individuals; nor do they make any showing that the burden of a search of their e-mails using all search terms would outweigh the benefit. Therefore, the EOP's argument is rejected as to these individuals. As to Marsha Scott, because her relevance was based only on her alleged participation in the possible misuse of FBI files, the search of her e-mail shall be limited to only those terms pertaining to "Filegate". The search of Maggie Williams' e-mail, to which the EOP also objected, should be similarly limited as her relevance was based only on her connection to Mr. Livingstone. As to Mr. Ickes and Mr. Stephanopoulos, however, the

The EOP also states that three of these individuals—Charles Ruff, Bruce Lindsey and the President have information only on the release of the Willey letters. Therefore, the search of these individuals e-mails shall be limited only to those search terms pertaining to Kathleen Willey.[21] The search shall further be limited to only the period from January 1998[22] to the present.

Two individuals, Terry Good and Cheryl Mills, have information regarding both the FBI files matter and the release of the Willey letters. Accordingly, their e-mail will be searched for all terms relating to both of these subject matters.

Finally, the EOP states that two of the individuals—Michael McCurry and Joseph Lockhart—are alleged to have information regarding only the release of information from Linda Tripp's file.[23] As such, the search of these individuals' e-mails should be limited to those terms that relate to the release of Tripp's information and should also be performed only on those e-mails from the relevant time period—January 1998[24] to the present.

n. Sally Paxton, Kathleen Wallman, Miriam Nemetz, David Fein, Jonathan Yarowsky, Christopher Lehane, Mark Fabiani, Natalie Willaims, and Rochester Johnson

▮ In their motion to amend their supplement regarding the ARMS e-mail search, the plaintiffs seek to add these nine individuals to the list of those whose e-mail should be searched. These individuals were listed in the EOP's Supplemental Responses to the Third Set of Interrogatories as individuals that may have second, third, or fourth-hand knowledge about how Livingstone was hired at the White House, the efforts of the Counsel's Office to respond to investigative inquiries, or the White House use of Chris Emery's and Billy Dale's FBI files.

The EOP responds, however, that the burden of searching the e-mails of those individuals with such attenuated knowledge to any relevant issues far outweighs any likely benefit that would be obtained by adding these persons to the list. The court agrees with the EOP's argument. The court further notes, as discussed above, that to the extent that any of these persons sent or received e-mails to or from those persons already included in the search who are alleged to be directly involved in the matters at issue, those e-mails will already be captured by the more limited search. Thus, the plaintiffs' request to add these individuals is denied.

2. Additional Search Terms

The EOP does not object to several of the plaintiffs' additional search terms.[25] These terms can be roughly divided into three subject areas, which this court has held to be relevant to the pending action: the acquisition and alleged misuse of the FBI files of

---

plaintiffs established that they had general, relevant information, and thus the search of their e-mail shall be for all search terms.

**21.** Similarly, the e-mail of Sidney Blumenthal, whose relevance was based only on his discussions regarding the Willey letters and their release, need only be searched for terms regarding Kathleen Willey.

**22.** The Willey letters were released on March 17, 1998. E-mail should be searched beginning in January of 1998, as suggested by the EOP, in order to capture any relevant e-mails regarding the events leading up to this release.

**23.** In their surreply, the EOP belatedly objects to the relevance of these two individuals based on the court's recent denial of the plaintiffs' request for documents showing the EOP's filing system for the released Tripp information. *See Alexander v. FBI,* 194 F.R.D. 305 (D.D.C.2000). Plain-

tiffs had argued that such information was relevant to establish whether there was a Privacy Act violation. *See id.* The court found, however, that since the information was released from the Department of Defense's ("DoD's") records, and not the EOP's, such information was irrelevant. *See id.* This finding is inapposite to the issue here, however, as the plaintiffs are still entitled to obtain discovery regarding whether the White House played a role in the DoD's decision to release that information.

**24.** Again, the release of Ms. Tripp's information took place in March of 1998, but the search shall begin in January in order to capture all e-mails pertaining to the events leading up to the release.

**25.** These search terms are included in the order proposed alternatively by the EOP in the event the court was to consider, as it has, the plaintiffs' expanded proposal.

former Reagan and Bush Administration employees ("Filegate"), the Department of Defense's release of information about Ms. Tripp, and the release of the Willey letters.

As to the remainder of the terms, however, the EOP argues that they are general terms that are only relevant when used in conjunction with the other, more narrow terms upon which the parties agree. Thus, a search for these terms would be duplicative and cumulative to the extent that it would produce relevant e-mails, and irrelevant otherwise. As such, they argue, the burden of searching for these additional terms clearly outweighs any small benefit that might be obtained.

The court agrees with this argument. To the extent that the additional terms are only relevant in conjunction with other terms already included in the search, the plaintiffs' request will be denied. In order to demonstrate that the addition of these terms is reasonably calculated to lead to the discovery of admissible evidence, the plaintiffs must demonstrate that these terms have particular relevance to the pending action outside of the matters already addressed by other terms. With this is mind, the court will now turn its analysis to the three subject area that it has deemed relevant to the pending case, and the additional terms within each category to which the EOP objects.

a. Filegate—reinvestigation, DNC or Democratic National Committee, Marsha Scott, Aldrich, FLOTUS, Mrs. Clinton, Maggie, database, Emery, Clinger, and privacy

The parties have agreed on the following search terms regarding the "Filegate" matter: background report, summary report, FBI files, OPS, Dale, Marceca, update project, personnel security, Sculimbrene, James Baker, Marlin Fitzwater, BI, and Brasseux. The EOP objects to other requests regarding the FBI files as overbroad, duplicative, and unduly burdensome.

1. Those terms that have already been rejected in conjunction with the court's discussion of the July 1999 proposal—Marsha Scott, FLOTUS, Mrs. Clinton and Maggie

Regarding Ms. Scott, the court has already found Ms. Scott's documents to be discover-

able and, thus, held that she be included in the list of those individuals whose e-mail will be searched. However, the court has also agreed with the EOP's argument that the names of those individuals whose e-mails are to be searched should not also be included in the list of search terms. As discussed above, the plaintiffs do not establish why Ms. Scott herself, outside of her relation to the particular subject matters already addressed by other search terms, is relevant to the pending action. Therefore, the plaintiffs' request to include Marsha Scott as a search term is denied.

Plaintiffs' request to include "FLOTUS" and "Mrs. Clinton" as search terms is also denied for the reasons given above in conjunction with the court's rejection of "HRC" and "Hillary" as search terms. Similarly, the plaintiffs' request to include "Maggie" as a search term is rejected based on the court's rejection of those requests using common first names standing alone as search terms.

2. "Aldrich," "Emery," and "reinvestigation."

■ The EOP argues that these terms are completely irrelevant to the pending action because the bear only on the obtaining of FBI files of then-current Clinton Administration employees, which this court has already held to be irrelevant and undiscoverable. *Alexander v. FBI*, 192 F.R.D. 50, 56 (D.D.C.2000). "Aldrich" refers to former Special Agent Gary Aldrich, and "Emery" the former White House Usher Chris Emery, both of whom, as plaintiffs have acknowledged, had their FBI summary reports requested while they were still employed at the White House. Similarly, the term "reinvestigations" is used to refer to periodic FBI reinvestigations, which are conducted only on current White House employees.

The court agrees that these requests seek irrelevant information, and therefore, should be denied. The court further notes that regardless of this court's prior ruling that such matters were irrelevant, the only relevance these terms could arguably have to this case would be captured by using the other, already agreed-upon search terms. Thus, the court rejects the plaintiffs' request that these terms be included in the search.

### 3. "DNC or Democratic National Committee," "database," and "Clinger"

The court finds that the plaintiffs have failed to establish any particular relevance regarding these terms. As to "DNC or Democratic National Committee," the plaintiffs argue that their request is due to Tripp's testimony that she overheard Ms. Scott and Mr. Kennedy discussing uploading what she took to be FBI files into a computer database to be shared with the DNC. By their own explanation, however, this term is relevant only in relation to FBI files, which is already included as a search term.

Regarding the term "Clinger," the plaintiffs state that Representative William Clinger may be among those whose FBI files were improperly obtained. Additionally, they state that he led the Congressional investigation handling into the handling of Billy Dale's file and the ensuing "Filegate" scandal. Once again, however, as "Dale" and "FBI files", as well as other related terms, are already included in the list of search terms, the plaintiffs fail to establish what additional, relevant material the term "Clinger" would produce. As to the term "database," plaintiffs make no attempt whatsoever to establish its relevance. Having failed to do so, their request to add "database" to the list of search terms is denied.

### 4. "Privacy"

Finally, in their supplemental briefing regarding non-ARMS e-mail, plaintiffs seek to add the term "privacy" to its previous list of search terms proposed for the ARMS search. The plaintiffs argue that this term is clearly relevant as this case is about the Privacy Act and the White House has maintained that the Privacy Act does not apply to it. The EOP objects to this request, however, as overbroad, arguing that this term, without limitation as to context, will generate messages having to do with such matters as the privacy of the First Family, or other irrelevant matters. The court agrees that the term "privacy," while relevant, is overbroad. Thus, this search term will be modified to "Privacy Act" and will be included in the search.

### b. Release of Tripp information— "The New Yorker"

The EOP objects to using "The New Yorker" as a search term based on the fact that innumerable articles have appeared in this magazine, which although they may be of interest to White House personnel, and thus the subject of e-mails, are completely unrelated to the release of Ms. Tripp's information. As the EOP points out, the parties have agreed to the related terms "Tripp [26]," "Jane Mayer," "arrest record," "Bacon," and "Bernath." Accordingly, any e-mails relevant to the release of Ms. Tripp's information should already be captured using these terms.

The court agrees with the EOP's argument. The New Yorker is relevant only as it relates to Jane Mayer's article regarding Ms. Tripp's arrest record. As this subject matter is already covered by other, more properly-tailored search terms, the plaintiffs' request to search for all e-mails including the term "The New Yorker" is denied. As discussed above, the court further notes that any search performed as to these terms need only be performed for the period of January 1998 to present.

### c. The release of the Willey letters

The only term proposed by the plaintiffs regarding this subject area is "Kathleen and/or Willey." The EOP argues that this terms should be modified to "Kathleen Willey," based on its argument that requests using first and last names standing alone as search terms are overly broad. As discussed above, the court agrees with the EOP's argument as to first names, but not as to last names standing alone. Thus, the EOP shall include the term "Willey" in its search. Once again, the court notes that any search as to this term need only be performed for the period of January 1998 to the present.

### 3. General search of all e-mails of Craig Livingstone, Anthony Marceca, Bernard Nussbaum, William Kennedy, and the First Lady.

In their expanded request, plaintiffs also request a general search of all e-mails to and

---

26. The court notes that, although Linda Tripp is also listed as an individual whose e-mail should be searched, the EOP does not object to the addition of her name as a search term as well.

from Livingstone, Marceca, Nussbaum, Kennedy, and the First Lady. The EOP objects to this request, arguing that, in light of the search already required to be performed of all e-mail to and from these individuals regarding all relevant subject matters, the burden of this search would outweigh any benefit that might be obtained. The court agrees with this analysis. Thus, the plaintiffs' request for a general search of e-mails is denied.

### III. *Conclusion*

In summary, the parameters for the ARMS search have been narrowed down to the following 33 individuals and 20 search terms:

Individuals: Bernard Nussbaum, Craig Livingstone, Anthony Marceca, Hillary Rodham Clinton, Vincent Foster, Bill Kennedy, Marsha Scott, Betsy Pond, Deborah Gorham, Linda Tripp, Mari Anderson, George Stephanopoulos, Harold Ickes, Margaret Williams, Lisa Wetzl, Jonathan Denbo, Edward Hughes, Jane Dannenhauer, Nancy Gemmell, Jane Sherburne, Terry Good, Stephen Waudby, Christine Varney, John Libonati, Jeff Undercoffer, Arnie Cole, Cheryl Mills, Michael McCurry, Joseph Lockhart, President William Clinton, Sidney Blumenthal, Bruce Lindsey, and Charles Ruff.

Search Terms: background report, summary report, OPS, Dale, Marceca, update project, personnel security, FBI files, Sculimbrene, James Baker, Marlin Fitzwater, BI, Privacy Act, Tripp, Jane Mayer, arrest record, Bacon, Bernath, Willey, and Brasseux.

Regarding the search terms "background report", "summary report", "OPS", "Dale", "Marceca", "update project", "personnel security", "FBI files", "Sculimbrene", "James Baker", "Marlin Fitzwater", "BI", "Privacy Act" and "Brasseux", the following individuals' e-mails should be searched for the period of January 1993 to the present: Bernard Nussbaum, Craig Livingstone, Anthony Marceca, Hillary Rodham Clinton, Vincent Foster, Bill Kennedy, Marsha Scott, Betsy Pond, Deborah Gorham, Linda Tripp, Mari Anderson, George Stephanopoulos, Harold Ickes, Margaret Williams, Lisa Wetzl, Jonathan Denbo, Edward Hughes, Jane Dannenhauer, Nancy Gemmell, Jane Sherburne, Terry Good, Christine Varney, John Libonati, Jeff Undercoffer, Arnie Cole, Cheryl Mills, and Stephen Waudby.

Regarding the search terms "Tripp", "Jane Mayer", "arrest record", "Bacon", and "Bernath", the following individuals' e-mails should be searched for the period of January 1998 to the present: Bernard Nussbaum, Craig Livingstone, Anthony Marceca, Hillary Rodham Clinton, Bill Kennedy, Betsy Pond, Deborah Gorham, Linda Tripp, Mari Anderson [27], George Stephanopoulos, Harold Ickes, Michael McCurry, and Joseph Lockhart.

Regarding the search term "Willey," the following individuals' e-mails should be searched for the period of January 1998 to the present: Bernard Nussbaum, Craig Livingstone, Anthony Marceca, Hillary Rodham Clinton, Bill Kennedy, Betsy Pond, Deborah Gorham, Linda Tripp, Mari Anderson, George Stephanopoulos, Harold Ickes, Terry Good, Cheryl Mills, President William Clinton, Sidney Blumenthal, Bruce Lindsey, and Charles Ruff.

The EOP may limit the scope of these searches to the White House Office ("WHO") bucket. It may not apply the standard ARMS "exclusions" for transcripts of public documents. To the extent any of these documents are produced, however, they need not be reviewed for relevance. The EOP is not

---

**27.** Vince Foster, to whom the EOP did not object, died in 1994. Accordingly, the EOP need not search his e-mail for those terms pertaining to the release of Ms. Tripp's information or the Kathleen Willey letters.

required to search accounts established for the receipt of "citizen" e-mails sent to the President and the First Lady, via the Internet, by members of the general public.

The court notes that this request adds only five individuals and one new search term to the EOP's alternative proposal, which the EOP estimates would take approximately 20 days to complete. The court also adds that it found the EOP's alternative proposal to be a very constructive approach to handling the discovery of e-mail, and it was very helpful to the court in its analysis.

For the reasons given above, the court will issue a separate order this date that the EOP conduct a search of all ARMS e-mail in accordance with the terms set out above. All relevant e-mails shall be produced to the plaintiffs within 20 days of this date.[28]

### ORDER

This matter comes before the court on Plaintiffs' Supplemental Brief to their Motion to Compel the Production of Documents Regarding Second Request to the Executive Office of the President ("EOP,"). For the reasons given in the corresponding Memorandum Opinion issued this date, it is HEREBY ORDERED that

1. EOP shall conduct a search within ARMS for e-mail from the period of January 1993 to the present containing the following terms:

 "background report", "summary report", "OPS", "Dale", "Marceca", "update project", "personnel security", "FBI files", "Sculimbrene", "James Baker", "Marlin Fitzwater", "BI", "Privacy Act" and "Brasseux",

 for the following individuals' e-mail:

 Bernard Nussbaum, Craig Livingstone, Anthony Marceca, Hillary Rodham Clinton, Vincent Foster, Bill Kennedy, Marsha Scott, Betsy Pond, Deborah Gorham, Linda Tripp, Mari Anderson, George Stephanopoulos, Harold Ickes, Margaret Williams, Lisa Wetzl, Jona-

than Denbo, Edward Hughes, Jane Dannenhauer, Nancy Gemmell, Jane Sherburne, Terry Good, Christine Varney, John Libonati, Jeff Undercoffer, Arnie Cole, Cheryl Mills, and Stephen Waudby.

2. The EOP shall also conduct a search within ARMS for the period January 1998 to the present for e-mails containing the following terms:

 "Tripp", "Jane Mayer", "arrest record", "Bacon", and "Bernath",

 for the following individuals' e-mail:

 Bernard Nussbaum, Craig Livingstone, Anthony Marceca, Hillary Rodham Clinton, Bill Kennedy, Betsy Pond, Deborah Gorham, Linda Tripp, Mari Anderson, George Stephanopoulos, Harold Ickes, Michael McCurry, and Joseph Lockhart.

3. The EOP shall also conduct a search within ARMS for the period January 1998 to the present for e-mails containing the search term "Willey"

 for following individuals' e-mail:

 Bernard Nussbaum, Craig Livingstone, Anthony Marceca, Hillary Rodham Clinton, Bill Kennedy, Betsy Pond, Deborah Gorham, Linda Tripp, Mari Anderson, George Stephanopoulos, Harold Ickes, Terry Good, Cheryl Mills, President William Clinton, Sidney Blumenthal, Bruce Lindsey, and Charles Ruff.

4. The EOP may limit the scope of these searches to the White House Office ("WHO") bucket.

5. In conducting the search, the EOP may not apply the standard ARMS "exclusions" for transcripts of public documents. To the extent any of these documents are produced, however, they need not be reviewed for relevance.

6. The EOP is not required to search accounts established for the receipt of "citizen" e-mails sent to the President and the First Lady, via the Internet, by members of the general public.

---

28. The court notes that its order today generally adheres to the EOP's proposed search, which the EOP estimates would take 20 days to complete, with only a few changes. The court finds that these changes do not engender a need for additional time to complete the search as ordered. If the EOP finds that additional time is necessary, it may at that time move for an extension.

7. The EOP shall produce all relevant e-mails to the plaintiffs within 20 days of this date.

SO ORDERED.